(173 App. Div. 821)

### MILLER v. CAMPBELL et al.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. BILLS AND NOTES ☞316—TRANSFER—CONSIDERATION.

Where a party agreed to sell land of another, and, if receiving less than $10,000 to pay the whole to the owner who agreed that if more than $10,000 was received the agent might retain whatever surplus there was over $10,000, the services rendered by the agent in selling the land and

the obligations imposed on the owner constituted valuable consideration for the transfer of the purchase-money notes to the agent.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 752; Dec. Dig. ☞316.]

2. BILLS AND NOTES ☞370—HOLDER IN DUE COURSE—FAILURE OF CONSIDERATION.

The defense of failure of consideration is not available against an innocent holder of notes in due course.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 963; Dec. Dig. ☞370.]

3. BILLS AND NOTES ☞346—EQUITIES.

Against the transferee of notes who was in fact a principal with his transferor in the sale of land for which they were given, all of the equities between the parties are open.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 869; Dec. Dig. ☞346.]

4. BILLS AND NOTES ☞333—HOLDER IN DUE COURSE—PRINCIPAL IN TRANSACTION.

Where the owner of land authorized another to sell and retain whatever he might secure over $10,000, giving a power of attorney authorizing him to convey by warranty deed, etc., the clear effect of the contract and the power of attorney being to give the right to sell upon any terms he pleased, being bound only to pay over to the owner $10,000, the other occupied the position of a principal in the transaction, having a joint interest in the enterprise, so that he was not a holder in due course of the purchase-money notes given for the land and transferred to him by the owner.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 806–811; Dec. Dig. ☞333.]

5. COVENANTS ☞118—COVENANT OF SEISIN—PRIMA FACIE PROOF OF BREACH.

In an action on notes given for land, testimony that title was impeached by grants from the state and also by earlier conveyances from the vendor to third parties constituted prima facie proof of breach of the covenant of seisin, placing the burden on the holder of the notes to tender evidence of title in the vendor, his transferor.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 211–215; Dec. Dig. ☞118.]

6. COVENANTS ☞27—BINDING FORCE ON ATTORNEY IN FACT.

Where a deed recited that it was executed by the grantor as attorney in fact for the owner of the land, and referred to the power of attorney under which he acted, being signed and acknowledged as attorney in fact, though such attorney was a principal in the transaction through having an interest, under agreement with the landowner, in the proceeds of the sale, he was not personally bound by the covenants in the deed, since where it is manifest from the language of a deed that it was intended as a deed of the principal, and not of the attorney, the latter cannot be held liable on the covenants.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 26; Dec. Dig. ☞27.]

7. BILLS AND NOTES ☞318—FAILURE OF CONSIDERATION—RIGHT TO ASSERT AS AGAINST TRANSFEREE.

Where the buyer of land knew that the party selling, acting for the owner, was to receive all of the price in excess of $10,000, and, paying $10,000 in cash, also gave $10,000 in notes, payable to the owner, who immediately transferred the notes to the party who sold, as his share, the buyer could assert a failure of consideration through breach of covenants

of title as against the party who sold, the transferee of the notes, who did not become a holder in due course.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 754; Dec. Dig. ☜318.]

8. COVENANTS ☜27—COVENANT BY ATTORNEY—BINDING FORCE.

Where a party as attorney in fact granted land, and not his individual interest, though the owner for whom he acted as attorney afterwards signed the deed, his covenant was his covenant as attorney and not individually.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 26; Dec. Dig. ☜27.]

Clarke, P. J., dissenting in part.

Appeal from Special Term, New York County.

Action by Walter W. Miller against Eugenia W. Campbell and others, as executors, etc. From a judgment dismissing the complaint and dismissing the defendants' counterclaim, plaintiff and defendants appeal. Affirmed.

The following is the opinion of Greenbaum, J., at Special Term:

This action is brought to recover the sum of $9,500 upon three promissory notes bearing date December 29, 1906, made by Charles E. Campbell, defendant's testator, to one A. K. McMurray, and indorsed by the latter to the plaintiff. These notes were given in part payment of the purchase price of certain mountain land in the state of Tennessee. On December 15, 1906, McMurray and plaintiff entered into an agreement under which McMurray employed Miller to sell the land in question. This agreement provides: "That in no event shall said Walter W. Miller sell said land for less than $10,000, in which event he shall pay the whole amount to me, less his expenses in making said sale, and in consideration of his services and for other valuable considerations the party of the first part [McMurray] agrees that said party of the second part [Miller] shall have and retain as his own any sum which he may receive for said land above said sum of $10,000, it being the intention of the party of the first part to have said property net him the sum of $10,000, and to give the party of the second part an opportunity to make something for himself, it being considered that said property is worth more and can be sold for more than $10,000." The agreement also refers to a power of attorney bearing even date, recorded in the register's office of Grundy county, Tenn., on December 20, 1906, under which McMurray appointed plaintiff his attorney in fact to "negotiate * * * sell and convey to any person or corporation * * * who will purchase the same by general warranty deed my certain tract of land containing five thousand acres, more or less * * * and take and receive the consideration money in payment of same and * * * bring and prosecute in my name any suit that may be necessary to gain possession of or establish my title to said land, and employ such counsel or other aid as he may need at my expense and charge." Plaintiff entered into negotiations with the defendant's testator with a view to the sale of the property, and on December 26, 1906, a deed was executed to Charles E. Campbell, defendant's testator, by plaintiff as attorney in fact for McMurray and one Louise J. Traynor, who united therein for the purpose of conveying any interest she might have under the laws of Tennessee for the protection of married women. Campbell's attorney objected to the deed, and insisted that McMurray join therein. Instead of preparing a new deed McMurray's name was interlined as grantor, and the date of the deed changed from December 26th to December 29th, on which day it was signed by McMurray, and by him acknowledged on December 31, 1906. The deed describes the plaintiff as attorney in fact for McMurray; recites the execution by the latter to the plaintiff of the power of attorney and the recording of such power in the register's office of Grundy county, Tenn., in Trust Book No. 7, page 163. It expresses a consideration of $20,000, payable as follows:

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

$2,110.50 to be paid by releasing McMurray from certain indebtedness upon notes and bonds held by Campbell; $7,889.50 in cash to Miller, the payment of which is acknowledged in the deed, and the balance by a series of notes. The deed covenants that the grantors "are lawfully seized and possessed of said property; that they have full right and authority to convey it; that it is unincumbered, and that they will forever warrant and defend the title against the legal claims and demands of all persons whomsoever." Campbell executed the three notes sued upon to secure payment of the balance of the consideration provided for in the deed, and McMurray indorsed these notes in blank to Miller in discharge of his obligations under the contract between them. The defendants resist payment of the notes upon the ground that there was a breach of the covenant of seisin by reason of the failure of title to the land.

The principal contentions of the defendants are: First, that Miller was a principal in the transaction, and stands in the same position as if the notes had been made payable directly to his order; and, second, that under the deed he is personally bound by the covenants of seisin and warranty therein contained.

[1] The services rendered by plaintiff and the obligations imposed upon McMurray under the agreement between them constituted a valuable consideration for the transfer of the notes to the plaintiff. Matter of Bradbury, 105 App. Div. 250, 93 N. Y. Supp. 418; Broderick & Bascom Rope Co. v. McGrath, 81 Misc. Rep. 199, 142 N. Y. Supp. 497, and cases cited. The first question to be determined is whether a failure of title constitutes a legal defense to the action upon the notes.

[2, 3] If the plaintiff may be regarded as an innocent holder of the notes in due course, the defense of failure of consideration is not available. On the other hand, if he be considered a principal in the transaction, standing in the shoes of McMurray, all of the equities between the parties are open. I am of opinion that the relation between McMurray and the plaintiff was not merely that of broker and client, or principal and agent. Broad and unusual powers far in excess of those committed to the ordinary broker were conferred upon him under the contract and power of attorney. The agreement between them is based, not only upon the services to be rendered by the plaintiff in selling the land, but "for other valuable considerations." Under its provisions, coupled with the control and authority conferred upon him under the power of attorney, he was to all intents and purposes, as far as third persons were concerned, vested with absolute title and ownership of the land. The clear effect of the contract and the power of attorney was to give him the right to sell the land upon any terms that he pleased. True, he was bound to pay over to McMurray $10,000, but beyond the receipt of that sum McMurray had no interest in the sale. He could at any time, by the payment of $10,000 to McMurray, have conveyed the land to himself or to any person that he might select. He was authorized to receive the consideration paid, and upon such receipt, all moneys in excess of $10,000 became his absolute property, and he was vested with the right to prosecute any suit to recover possession of or establish title to the land.

[4] In view of these considerations, in my opinion, the plaintiff must be held to have occupied the position of a principal in the transaction and as one having a joint interest in the enterprise. This conclusion is supported by authority holding under an analogous state of facts that one vested with the power of authority and occupying a similar position to that of the plaintiff is a principal and not an agent. Thus, in Robinson v. Easton Eldridge & Co., 93 Cal. 80, 28 Pac. 796, 27 Am. St. Rep. 167, the plaintiff executed to the defendants an instrument whereby the defendants were authorized within five days from date and until cancellation of the authority in writing to sell for the sum of $10,000 certain real property and agreed to pay them "a commission of all over said sum of $10,000 net, for which they may sell such property with our consent." In determining the character of the relationship created by this instrument the court said: "The relation of the defendant to the plaintiffs was not that of a mere agent. While its authority to sell the land was derived from the plaintiffs, yet the sale was to be made for its own

account and benefit, as well as for that of the plaintiffs. Although the authority to sell was not so coupled with an interest as to create in the defendant an interest in the land, or to prevent the plaintiffs from revoking the authority, yet by the terms of the authorization the defendant acquired such a right to a portion of the proceeds of a sale as to enable it to make a contract of sale upon terms of its own choosing. The plaintiffs, in effect, gave to the defendant an option for five days to endeavor to sell the block of land for whatever sum it could obtain, and upon whatever terms it might make, provided they should receive therefor the sum of $10,000, and agreed that defendant should have whatever sum it could realize therefor above that amount. The relation thus created between them was rather that of a vendor and purchaser under a contract of sale than one of principal and agent, and a sale by the defendant thereunder was in the capacity of a vendor upon its own account, and not for the account of the plaintiffs. Inasmuch as the defendant was entitled to all the proceeds of the sale in excess of $10,000, it had the right to make the sale upon such terms as in its judgment would enable it to realize the highest price for the land. Upon a sale by it the plaintiffs were entitled to the immediate payment of the $10,000, but the defendant could sell the land either for cash or upon time, as it might choose, and its terms of sale did not require ratification by the plaintiffs." It therefore seems to me, upon the peculiar facts here appearing, that the plaintiff must be deemed a principal in the transaction, and that a failure of title to the land constitutes a valid defense to the action.

[5] The second question presented is whether there was a breach of the covenant of seisin. The testimony establishes that the title to this land is not only impeached by earlier grants from the state, but also by earlier conveyances from McMurray himself to third parties. This constituted prima facie proof of a breach of the covenant of seisin, and the duty devolved upon the plaintiff of tendering evidence of title in McMurray. The plaintiff, however, introduced no evidence in support of McMurray's title, and a breach of the covenant must therefore be deemed established. Koch v. Ellwood, 138 App. Div., 584, 587, 123 N. Y. Supp. 502. Defendant interposes a counterclaim to recover the amount paid upon delivery of the deed. A marked difference, however, exists between the defense to the notes and the claim of defendant for affirmative relief against the plaintiff. The former rests upon the relationship created under the contract between plaintiff and McMurray and the power of attorney executed in conjunction therewith. The latter under the the pleadings is predicated solely upon the alleged breaches of the covenants of the deed, and not by reason of the contract of sale or the agreement between plaintiff and McMurray. The effect of the foregoing opinion is that, considering the agreement in connection with the power of attorney, the plaintiff must be deemed a principal to the extent of his interest in the proceeds of the sale.

[6] But such interest does not personally bind the plaintiff under the covenants in the deed. The deed distinctly recites that it was executed by plaintiff as attorney in fact for McMurray, and refers to the power of attorney under which he acted in making the conveyance. It was signed by him as attorney in fact and acknowledged in the same capacity. Where it is manifest from the language of the deed that it was intended as a deed of the principal and not of the attorney, the latter may not be held liable on the covenants therein contained. Rand v. Moulton, 72 App. Div. 236, 238, 76 N. Y. Supp. 174. The same rule prevails in the state of Tennessee by statutory enactment providing as follows: "Instruments in relation to real or personal property executed by an agent or attorney may be signed by such attorney for his principal, or by writing the name of the principal by him as agent or attorney, or by simply writing his own name or his principal's name if the instrument on its face shows the character in which it is intended to be executed." Shannon's Code, § 3679. It is therefore apparent from the form and language of the deed that it was not the intention of the parties that plaintiff should be personally bound upon the covenants therein set forth. It follows that there should be judgment dismissing the plaintiff's complaint and the defendant's counterclaim upon the merits.

Argued before CLARKE, P. J., and McLAUGHLIN, DOWLING, SMITH, and PAGE, JJ.

Elon R. Brown, of Watertown, for appellants.

I. R. Ocland, of New York City, for respondent.

SMITH, J.   I recommend an affirmance of this judgment upon the opinion of Mr. Justice Greenbaum at Special Term, and would add a few words only to that opinion.   In that opinion the facts are fully stated.   For the purposes of this memorandum, the facts may be briefly summarized as follows:

Plaintiff as attorney in fact assumed to sell some lands in Tennessee to defendant's testator.   Under the power of attorney, as was known to defendant's testator, plaintiff was to receive the full purchase price in excess of $10,000.   The defendants paid what was equivalent to $10,000 in cash and $10,000 in notes drawn payable to the plaintiff's principal.   Those notes were immediately turned over to the plaintiff to represent his interest in the sale.   The title to the property failed, and plaintiff seeks to escape the defense of failure of consideration by claiming to hold the notes as a purchaser for value.

[7]   The deed was originally drawn in form from plaintiff acting as attorney in fact to defendant's testator.   One Louise J. Traynor joined in the deed to convey any right of dower that she might have.  Afterwards the plaintiff's principal, McMurray, also joined.   The deed recites a covenant on behalf of the parties of the first part that they are lawfully seised and possessed of said property, and that they have full right and authority to convey it.   Defendant's counterclaim is upon this covenant.

In Schlemmer v. Nelson, 123 Minn. at page 66, 142 N. W. 1041, the plaintiff was the agent of the Sperry Realty Company in making a contract for the sale of certain real estate.   The Sperry Realty Company did not have the title to the real estate, but had an option thereupon.   A note for $500 was delivered for the first installment of the purchase price and by the Sperry Company transferred to plaintiff.  Under its contract the Sperry Company was limited to 60 days in which to perfect title, and if it failed the contract by its terms became void.   It appearing that the company never acquired title, and prior to the trial had transferred its rights under the option to parties other than the defendant, it was held that the consideration for the note had wholly failed, and plaintiff, having taken the note with knowledge of all the facts, was not in a position to invoke the rule protecting a good faith purchaser.

A similar holding was that in Boit & McKenzie v. Whitehead et al., 50 Ga. 76.   In this case the plaintiffs were the agents of a manufacturer of guano, and as such by their local agent sold to the defendant a lot of guano, with warranty, taking a note for the price payable to themselves.   Afterwards, before the note became due, they became the real owners of the note, by arrangement between themselves and the manufacturer.   Held, that the plaintiffs were not such bona fide purchasers without notice, of defendant's note, as that defendant could not set up as a plea that the guano was of no value, even though it be

not proven that plaintiffs knew it to be of no value at the time they became the real owners of the note. Upon the trial the court refused to charge—

"that if the note sued on had been transferred by indorsement, before due, and plaintiffs had bought the same in good faith and for a valuable considera- tion, without any notice of any defect, latent or otherwise, in the guano, or of any defense of defendants to said note, then, under the pleadings, the fail- ure of consideration could not be set up."

In the opinion it is stated:

"We can hardly see, even if the note was not payable to the plaintiffs, they could be innocent purchasers, since the defendant has nothing to do with the manufacturer, except through them. They were the means by which the de- fendants were imposed on, if they were imposed on. We think the plaintiffs too clearly mixed up with the sale and warranty, and with the note itself, to become innocent holders of the note."

In Vander Ploeg v. Van Zuuk, 135 Iowa, 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490, 124 Am. St. Rep. 275, the headnote reads:

"A payee who takes a note for past indebtedness, in which a blank has been wrongfully filled out, is not a holder in due course, within the meaning of the section in the negotiable instruments law requiring blanks to be filled ac- cording to instructions, but providing that, if such an instrument, after com- pletion, is negotiated to a holder in due course, he may enforce it as if it had been filled up strictly in accordance with the authority given."

While the question decided differs from the question involved in this action, the discussion I think throws some light upon the situation here presented. After discussing .the Negotiable Instruments Laws of the state of Iowa, which do not differ materially from ours, the opinion reads:

"It seems to us, under these definitions and the applications thereof, the plaintiff was a holder of the note, but not a holder in due course. The latter term seems unquestionably to be used to indicate a person to whom, after com- pletion and delivery, the instrument has been negotiated. In the ordinary case of the instrument [the payee] is the person with whom the contract is made, and his rights are not in general dependent on any peculiarities in the law of negotiable instruments. *The peculiarities of that law distinguishing negotiable instruments from other contracts relate to a holder who has taken by negotiation, and not as an original party.* This is the construction put on the same phrase used in the English negotiable instruments act by Lord Rus- sell, Ch. J., in Lewis v. Clay, 67 L. J. Q. B. N. S. 224, in which he says: 'A holder in due course is a person to whom, after its completion by and as be- tween the immediate parties, the bill or note has been negotiated. In the present case the plaintiff is named as payee, on the face of the promissory note, and therefore is one of the immediate parties. The promissory notes, held and sued on [by the person named as payee therein] have in fact never been negotiated within the meaning of the act.' "

While this citation from Lewis v. Clay is probably dictum, and while the question decided was different from the question here aris- ing, the opinion has clearly indicated that the persons for whose pro- tection immunity is given to negotiable instruments are those who have negotiated the purchase of the paper, after its inception. It may be that the payee named in a note is so separated from the considera- tion of the note that he may still have the rights of a purchaser for value of commercial paper. On the other hand, a transferee may be

so associated with the consideration of the note and the transaction in which the note was given as not to be within the intended protection of the Negotiable Instruments Law (Consol. Laws, c. 38). By the original arrangement in the case at bar those notes were to be made payable to Miller directly. When the matter was consummated, however, the defendant's agents had made the notes payable to McMurray, the defendant's principal. If they had been made payable to Miller directly, who entirely negotiated the sale, it hardly seems possible that the defendant could not assert a failure of consideration, as the defendants knew the terms of the power of attorney under which Miller was acting, and that the consideration in excess of $10,-000 was to go to him. Nor do I think Miller can gain any greater right because McMurray was made the original payee, who immediately transferred the notes to him. I am unable to escape the conviction that by reason of Miller's relationship to this transaction, as well as his interest in the proceeds of the sale, he has not become a holder in due course of this note, so as to be protected against the defense of failure of consideration.

[8] The holding that Miller was not the holder of this note in due course does not necessarily involve the holding that he is bound by the covenant of seisin in the deed. The deed was first executed by Miller, the attorney in fact, without McMurray. He became grantor in the deed within the statutes of Tennessee only in execution of his power of attorney. He was not a record holder, so that any conveyance was necessary from him, and as the grant was of his interest as attorney, and not his individual interest, so without specific declaration his covenant is his covenant as attorney and not individually. The fact that McMurray afterwards signed the deed is not sufficient to indicate any intention upon the part of Miller to become personally liable upon the covenant.

The judgment should be affirmed, without costs. Order filed.

McLAUGHLIN and DOWLING, JJ., concur. PAGE, J., concurs in result.

CLARKE, P. J. I dissent from so much of this opinion as affirms the dismissal of the complaint and vote to reverse and concur in the affirmance of the dismissal of the counterclaim.