HARRY MARION SIMS, as Executor, etc., Respondent, *v.* UNITED STATES TRUST COMPANY OF NEW YORK, Appellant.

S., plaintiff's testator, delivered to C. his check on the People's Bank of New York, payable to the order of defendant, with verbal directions to deposit the same with defendant. Instead of doing this, C. delivered the check to defendant, requesting and receiving from it a certificate of deposit, payable to him as trustee for the amount of the check, on which he shortly thereafter drew the money, and converted it to his own use. Defendant collected the amount of the check. In an action to recover the amount, *held* that defendant was liable; that the check simply imported ownership of the money by S., and his desire to transfer it from the People's Bank to defendant; that while the latter could have refused to receive the deposit, or to act as the agent of S. in transferring the fund, having accepted the office, it was bound to retain the moneys until it received his instructions as to paying them out.

On the trial defendant offered in evidence a power of attorney executed by S. to C., some seventeen years previous to the transaction in question, and which had remained in the custody of the People's Bank. By this instrument C. was constituted the attorney of S. "to collect and receive all sums of money" then due, or thereafter to become due to S., "whether from rents, accounts, bonds and mortgages or otherwise;" also, to transact the ordinary bank business of S. at the People's Bank ; "to draw checks on said bank, and to indorse checks, promissory notes, drafts and bills of exchange for collection." Defendant did not know of the existence of this power of attorney until after the transaction. *Held*, that the power of attorney was properly excluded; 1st. As at the time C. made no claim to be, and defendant had no reason to suppose he was acting as general agent for S. 2d. Because the instrument did not, in fact, authorize C. to withdraw from defendant the deposit.

Also *held,* defendant's liability was not affected by the fact that it was its custom to require the signature of a customer to accompany a deposit ; that the custom was adopted for its protection, and it was at liberty to enforce or omit it; and, having received the money without requiring a compliance with the custom, it was liable.

(Argued October 18, 1886 ; decided November 23, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made October 30, 1885, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover the amount of a deposit made by plaintiff's testator with defendant.

The material facts are stated in the opinion.

*Wm. A. W. Stewart* for appellant. The power of attorney was a complete protection to the defendant in paying the money to Crowell, and his receipt was a good acquittance and discharge therefor, whether he was authorized to deposit the money in his own name or not. (Pollock's Prin. of Con. 50–1 ; Holmes' Com. Law, 229 ; Holland on Jur. 87 ; Pothier on Oblig. 144; *Dykers* v. *Townsend,* 24 N. Y. 60; *Briggs* v. *Partridge,* 64 id. 362; *Nicoll* v. *Burke,* 78 id. 584 ; 1 Am. Lead. Cas. 563.) No demand was necessary to enable the owner to recover. (*Howard* v. *France,* 43 N. Y. 595 ; *Milliken* v. *Byerly,* 6 How. 214 ; *E. N. Y. & Jam. R. R. Co.* v. *Elmore,* 5 Hun, 214.) The phrase "due and to become due," read in connection with the other language used in the power, conferred upon the attorney authority to collect sums of money, whether due or not. (*Kellogg* v. *Barber,* 14 Barb. 11; Story on Agency, § 58.) The presumption of law is that the power shown to have existed and to have been exercised continued in the absence of evidence to the contrary. (*Wilkins* v. *Eagle,* 44 N. Y. 192; Lawson on Presump. Ev. 172, 175.) In case of doubt and difficulty in the construction of written instruments there is no safer clue than that supplied by the acts of the parties. (*U. S.* v. *Allison,* 91 U. S. 303; *Chicago* v. *Sheldon,* 9 Wall. 54; *Gen. Mut. Ins. Co.* v.

*Sherwood*, 14 How. [U. S.] 362.) Even with the power of attorney out of the case there was enough evidence, both of original authority and ratification, to carry these questions to· the jury. (*Peck* v. *Ritchey*, 66 Mo. 114; *W. & A. R. R. Co.* v. *McElwee*, 6 Heisk. 218.)

*J. Alfred Davenport* for respondent. Proof that Crowell was Dr. Sims' agent was immaterial, for such proof would not go to show that he had authority to do what he did. (*Merchants' Bank* v. *Livingston*, 74 N. Y. 223.) A power of attorney will be strictly construed. The authority is never extended beyond that which is given in terms, or which is necessary and proper for carrying the authority into effect. (*Craighead* v. *Peterson*, 72 N. Y. 279, 284; *Bk. of Ind.* v. *Bugbee*, 3 Keyes, 461; *Holtsinger* v. *Corn Exch. Bk.*, 37 How. Pr. 213; *Fereira* v. *Depew*, 17 id. 418; *Atwood* v. *Munnings*, 7 B. & C. 278; Story on Agency, § 68; Paley on Agency [3d ed.], 192.) Money on deposit is not due until a demand is made by the depositor. (*Payne* v. *Gardiner*, 27 N. Y. 146, 155; *Pardee* v. *Fish*, 60 id. 265; *Howell* v. *Adams*, 68 id. 314, 321; *Munger* v. *Albany City Bk.*, 85 id. 383; *Downs* v. *Phœnix Bk.*, 6 Hill, 299; *Nat'l Bk.* v. *W. C. Nat. Bk.*, 5 Hun, 607.) The words "or otherwise" cannot be held to enlarge the meaning of the previous particular words used in the power except by extending them to other things strictly of the same nature. (*Taylor* v. *Harlow*, 11 Barb. 232.) A special power of attorney must be construed strictly according to its spirit with reference to the subject-matter of the authority. (*Craighead* v. *Peterson*, 72 N. Y. 279; *Conmendjoy Coondoo* v. *Watson*, 50 L. T. R. 411; *Stuart* v. *Bute*, 1 Dow. 73; *Holtsinger* v. *Corn Exch. Bk.*, 37 How. Pr. 213.) There was no conversion, because the Trust Company came lawfully into possession of the check and made the disposition thereof intended by the drawer, to-wit: turned it into money to await its withdrawal by the proper party. (*Thompson* v. *Riggs*, 5 Wall. 663, 680.) If there had been a conversion, it would have been optional with Dr. Sims whether to treat it as

such, or to treat the Trust Company as the depositary of the proceeds, and the power to exercise such option was not conferred on Crowell. (*Johnson* v. *First Nat. Bk. of Hoboken*, 6 Hun, 124; *Talbot* v. *Bk. of Rochester*, 1 Hill, 295; *Canal Bk.* v. *Bk. of Albany*, id. 287.) The fact that Crowell had possession of the check was no evidence of any implied or apparent authority or control by him, as agent, over its proceeds. (*Bates* v. *First Nat. Bk.* 6 Hun, 124; 68 N. Y. 616; *Bristol Knife Co.* v. *First. Nat. Bk.*, 41 Conn. 421.)

RUGER, Ch. J. On the 15th of November, 1882, the plaintiff's testator, J. Marion Sims, delivered to one Crowell, his check on the People's Bank of the City of New York, payable to the order of the defendant for $5,000, with verbal directions to deposit the same to his credit with the defendant. Instead of doing as directed, Crowell delivered the check to the defendant, but requested and received from it a certificate of deposit payable to himself as trustee for Dr. Sims, and shortly thereafter drew the money thereon and converted it to his own use. The defendant collected the money from the People's Bank upon Dr. Sims' check, and the main question in the case is whether it had authority to make the payment it did to Crowell.

It claims to have acted in so doing upon the strength of an alleged custom among banks authorizing such a payment. Upon the trial, however, the proof in relation to such custom was conflicting, and the questions as to its existence were submitted to the jury, and found against the defendant's claim.

Upon the transaction with this feature eliminated there would seem to be no doubt of the defendant's liability. The check upon its face imported the ownership of the moneys represented in it by Dr. Sims, and his desire that its custody should be transferred from the People's Bank to the defendant. This certainly did not warrant the defendant in supposing that Dr. Sims thereby intended to pay $5,000 to Crowell, or place him for any purpose in possession of the fund. If he had so intended, the check would have been made payable to Crowell's

order, and there would have been no need of the agency of
the defendant in the transaction. The use of the defendant's
name as payee of the check indicated the drawer's intention to
lodge the moneys in its custody and place them under its con-
trol, and nothing further than this was inferable from the lan-
guage of the check. The check, by its terms, authorized the
defendant to withdraw from the People's Bank a certain sum
for a purpose not disclosed, but fairly inferable from the nature
of the defendant's business.

The defendant could have refused to receive the deposit, or
act as Dr. Sims' agent in transfering the funds from one custo-
dian to another; but having accepted the office of so doing, it
was bound to keep Dr. Sims' moneys, until it received his direc-
tions to pay them out. The language of the check making the
funds payable only upon the order of the defendant imposed
upon it the duty of seeing that they were not, through its
agency, improperly disbursed after it had received them. They
could not safely pay out such funds except under the direction
of their lawful owner. This they have never received, unless
the proof hereafter referred to shows such authority.

On the trial the defendant offered in evidence a power of
attorney from Dr. Sims to Crowell, which, so far as appears,
had always remained in the custody of the People's Bank, and
never came to the knowledge of the defendant until after the
transactions in question. This evidence was objected to by the
plaintiff and excluded by the court, to which ruling the defend-
ant excepted. This exception presents the principal question
in the case.

The power of attorney read as follows: "Know all men by
these presents, that I, J. Marion Sims, of the city of New
York, have made, constituted, appointed, and by these presents
do make, constitute and appoint Gilbert L. Crowell, of the same
place, my true and lawful attorney, for me and in my name,
place and stead, to collect and receive all sums of money now due
or hereafter to become due to me, whether from rents, accounts,
bonds and mortgages or otherwise, and upon payment thereof
to give good and sufficient receipts or other discharges therefor.

" Also, to transact all my ordinary bank business at the People's Bank in the city of New York, to draw checks on said bank, and to indorse checks, promissory notes, drafts and bills of exchange for collection or deposit, this power of attorney to remain in force until said bank is notified of its revocation, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done, by virtue hereof.   In witness whereof, I have hereunto set my hand and seal the fifth day of April, in the year one thousand eight hundred and seventy

"J. MARION SIMS.   [L. s.]

" 50 cents internal revenue stamp.

" Sealed and delivered    · ⎱
            in the presence of ⎰

" CHARLES Q. BUSHNELL."

We are of the opinion that the exception was not well taken. At the time of this transaction Crowell made no claim of acting as the general agent of Sims, and the defendant had no reason to suppose that he was acting in such a capacity.   It dealt with him solely upon the faith of the apparent authority inferable from his possession of the check, and if it was mistaken in supposing that that fact gave him authority to dispose of the fund, there is no reason in equity or justice why it should not be held to the consequences of its error.

Assuming for the present that the power of attorney gave Crowell authority in fact to withdraw the deposit from the defendant, yet the defendant did not rely upon or act on this authority.   It is by no means certain, if the bank had required Crowell to show his authority to dispose of Dr. Sims' moneys, an examination of the power would have led to a refusal to pay them out on a stale paper, antedating the transaction by

upwards of twelve years, and couched, to say the least, in ambiguous language. Further inquiry would undoubtedly have led to a discovery of Crowell's abuse of his employment, and the danger threatening the security of the fund intrusted to him to deposit. The loss of the moneys in question is directly traceable to the defendant's act in paying Crowell upon an unwarranted assumption of his authority to receive them, and its neglect to investigate the extent of his power.

But however this may be, we are of the opinion that the power did not in fact authorize Crowell to withdraw the deposit.

The defendant is not even entitled to invoke the benefit of the rule requiring the language of a written instrument to be construed most strictly against its maker, for it did not see the power or pay the money upon a consideration of its provisions, and it stands now upon the authority which the power in fact gave to Crowell. If we regard the authority intended to be conveyed by the first paragraph alone, it would hardly seem that it embraced within its terms authority to withdraw deposits or change investments, but when considered in the light of the rule restricting the meaning of general words by the signification of those associated with them, it seems such authority was still further removed from the intention of the parties. The clause itself imports a general power to collect and receive all moneys due and to become due upon "rents, accounts, bonds and mortgages, or otherwise," and evidently refers to such collections of moneys as would be within the ordinary duties of a collecting agent.

Under well-settled rules the words "or otherwise" are limited in their meaning by the words "rents, accounts, bonds and mortgages" preceding them, and refer to debts and liabilities of a similar character, and cannot reasonably be held to extend to the collection of moneys already received and deposited in a solvent institution subject to the immediate disposition of the owner. To say that the removal of a deposit with a solvent trust company, under the claim that the agent was thereby engaged in the business of collecting his principal's credits,

would seem to be straining the clear meaning and intent of an authority to transact only collecting business.

Familiar illustrations of the application of the rule of *noscitur a sociis* occur in *Mangam* v. *City of Brooklyn* (98 N. Y. 585, 595); *McGaffin* v. *City of Cohoes* (74 id. 387, 389); *Corning* v. *McCullough* (1 id. 47), and fully authorize the construction which we have given to this power.

When, however, this clause is considered in connection with the subsequent provisions of the power, all serious doubt of its meaning would seem to be removed. The last clause specially treats of the powers intended to be conferred upon the agent in dealing with banks in the name of his principal. If such duties had been supposed to be included in the first paragraph then the last one has no office to perform. If the authority " to collect and receive all sums of money now due or hereafter to become due " gave Crowell power to transfer and remove trust deposits placed by way of investment or otherwise in banking institutions, certainly the special provision authorizing him to transact such business with the People's Bank was unnecessary and useless. Its insertion indicates unmistakably the understanding of the parties that the authority was not supposed to be embraced in the first clause of the instrument, and was specially required to be inserted in order to enable him to transact any banking business. Well-settled rules of construction require us to give effect to every part of the instrument, and this can be done only by holding that the last clause was intended to embrace all of the authority designed to be conferred upon Crowell to deal with banks in Dr. Sims' name. This view is also strengthened by the application of the rule requiring grants of power to be so construed as to exclude the exercise of a power in any other form or manner than that specially authorized. The clause of the power conferring authority to transact business with the People's Bank, and with that bank alone, impliedly prohibited such transactions with any other banking institution.

We, therefore, think that the evidence in question was properly excluded.

The circumstance that it was the custom of the trust company to require the signature of a customer to accompany a deposit was one adopted for the safety and protection of the bank, which it was at liberty to enforce or omit as it deemed best under the circumstances. It could not affect its liability to the real owner for moneys actually received by it, or the legal effect of a transaction by which it came into the possession of another's property.

We think that the evidence of ratification by Dr. Sims of the act of Crowell in making the deposit in question as he did, was not sufficient to authorize the submission of that question to the jury.

On the whole case we are of the opinion that no error was committed on the trial, and that the judgment should be affirmed.

All concur, except RAPALLO, J., not voting.

Judgment affirmed.