MORRIS ALPERT, Plaintiff, *v.* CITY MOTOR SALES, INC., Defendant.

City Court of Albany, March 21, 1949.

*Leonard L. Rosenthal* for plaintiff.

*Joseph Besch, Jr.,* for defendant.

HERZOG, J.   In March of 1948, the plaintiff drew a check upon his account in the National Commercial Bank and Trust Company of Albany payable to the order of the defendant, in the amount of $600.   This check was delivered to one William Huson. It appears that Huson had represented to the plaintiff that he could purchase a new automobile for him from the defendant and that it was necessary to make a down payment of $600 upon this car.   The check was given for that purpose.   The plaintiff had previously bought a car through Huson, who was a patient of Dr. Alpert.

During March, the defendant had loaned Huson $1,200 upon Huson's automobile, which had been left with the defendant as security.   Payments were made upon this account from time to time.   On March 29th, Huson gave Mr. Huff, the general manager of the defendant, the $600 check of the plaintiff.   He said, at that time, to Mr. Huff, " That's the kind of friends I have; I can borrow money when I need it," and represented to Huff that the money had been loaned to him for the purpose of paying his debt to the defendant.   This was credited to Huson's account and a short time later the debt was paid in full and his car released.

After the car had been released, the plaintiff called the defendant to ascertain when he could expect a new car.   The above facts were then brought to light and this action was commenced for moneys had and received.

The defense is that the defendant was a holder in due course of the check of the plaintiff.   Thus, the question whether or not a payee of a check can be a holder in due course is again before the court.   This had been considered an open question in New York State.   However, in my opinion, the question has been conclusively determined by the Court of Appeals in *Munn* v. *Boasberg* (292 N. Y. 5) when the court said, speaking through Judge THACHER, at pages 8 and 9:

" We think the court erred in dismissing the complaint and refusing the plaintiff's request to go to the jury.   The check, being drawn by the plaintiff to the order of the defendant, imported on its face that the money represented by it was the

plaintiff's property and that the plaintiff, not Shuman, was paying it to the defendant. Shuman had no apparent title to the check and was therefore to be regarded as the agent of the plaintiff for the purpose of delivering the plaintiff's check to the defendant. * * *

"Under the provisions of the Negotiable Instruments Law, the burden was cast upon the defendant to prove that he, or some person under whom he claimed, acquired title to the check as a holder in due course (§ 98). This he could not do because the check itself was constructive notice that the funds it represented were funds of the plaintiff which could not be applied in payment of the agent's personal indebtedness without inquiry of the principal. Such an inquiry might well have disclosed immediately the purpose for which the check was delivered. The defendant was therefore chargeable with knowledge of that fact."

No language could be stronger than this. However, the defendant asserts that this case is distinguishable from the present case because there was some relationship between all the parties in the *Munn* case (*supra*). I think that the attempted distinction is specious and the *Munn* case is determinative of the issues here. This could settle this matter but for the criticisms of such a holding which appears in Beutel's Brannan, Negotiable Instruments Law (7th ed., § 52, pp. 685, 687). Mr. Beutel, speaking of another case than the *Munn* decision, has said, at page 687: "It would indeed be regrettable if a court of the greatest commercial state had taken a position so contrary to the great weight of authority, both at common law and under the Negotiable Instruments Law." However, compare the discussion of this same problem in 142 American Law Reports 489 by A. M. Swarthout. In both these authorities, there is an extended consideration of all the authorities in New York State, and I think no further discussion is necessary after the decision of the Court of Appeals in the *Munn* case (*supra*).

The reasoning of our higher courts seems sound. It follows the precedents of this State. The language of *Hathaway* v. *County of Delaware* (185 N. Y. 368, 372–373) is apt. "There was an earmark on the money which the defendant received and the plaintiffs' check was diverted in that, while it was given as a loan to defendant, it was used to pay Woodruff's debt. Had the plaintiffs given Woodruff money and the defendant received it in good faith without knowledge how it was obtained, doubtless the plaintiffs could not recover. I assume that if they had

given a check to Woodruff's order the money could not be reclaimed after payment even if plaintiffs could have successfully resisted an action brought on the check." There must be some distinction between money and other instruments of exchange, and I think that our court has brought a stop to the extension of the rules which bring checks in almost the same category as money.

I am admitting the conversations of Huson and Huff; I am overruling the objections to the conversations between Huson and Huff on the authority of *Munn* v. *Boasberg* (*supra*), and find, as a matter of law and fact, that the defendant was not a holder in due course. Judgment for the plaintiff in the sum of $600 together with interest thereon from March 29, 1948.