OPINION OF THE COURT
Richard W. Wallach, J.
Plaintiff Firemen’s Insurance Company of Newark, New Jersey (Firemen’s), as assignee of Ladenburg, Thaiman & Co. Inc. (Ladenburg) moves for summary judgment against Chase *614 Manhattan Bank, N. A. (Chase). Chase informally cross-moves for summary judgment.
It would seem that between approximately June 14, 1973 and January 30, 1975, Jay Shaw, then the comptroller of Ladenburg, presented to Chase four checks totaling $35,347.30, drawn by Ladenburg on Citibank. They were payable, when presented to Chase, to “Chase Manhattan Bank A/C Jay Shaw”. Chase paid the proceeds into Shaw’s account, and he has since dissipated them.
In March, 1979, Firemen’s commenced this action against Chase, alleging that Chase had received the four checks for the benefit of Ladenburg and had not deposited them to its account but to another account.
Firemen’s now moves for summary judgment on the affidavits of Ladenburg’s current chief financial officer (who appears to have no firsthand knowledge of the original transactions) and, more significantly, on the affidavit of Jay Shaw, sworn to on April 5, 1979, which amounts to a bold confession.
Shaw swears that he drew the four checks payable only to Chase “intended for and drawn for the purposes of paying amounts due to Chase * * * from Ladenburg”, and that he had the checks signed by an authorized officer of Ladenburg, and that only at that time did he determine to steal the proceeds of the checks, that he added after Chase’s name as payee "A/C Jay Shaw”, and had the proceeds deposited in his account and spent them.
It is to be noted that Shaw’s version, portraying either remarkable coincidence or careful tailoring, would prevent Chase from utilizing the "fictitious payee” defense. Official Comment 4 to section 3-405 of the Uniform Commercial Code states the rationale of the "fictitious payee” rule: "The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee.”
The principle was given legal effect in section 3-405 (subd [1], par [c]) of the Uniform Commercial Code:
*615 "(1) An indorsement by any person in the name of a named payee is effective if * * *
"(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.”
Thus, if Shaw intended to embezzle the proceeds when he presented a check to Ladenburg for signature, then Chase, although an actual corporate person, would have been a fictitious payee within the meaning of section 3-405 of the Uniform Commercial Code, and an indorsement by any person would be valid against Ladenburg. But, in avoidance of that result, Shaw swears that each of the checks was intended to pay an actual obligation of Ladenburg to Chase and that he decided to embezzle the proceeds only after Ladenburg had signed the checks.
Firemen’s relies on a line of cases, typified by Sims v United States Trust Co. of N. Y. (103 NY 472), in which a depositor draws a check to a bank, intending that the proceeds be deposited in his account, but a third person diverts the proceeds into his own account. It is true that a bank or any other person who receives, willingly or unwillingly, someone’s property as a custodian must treat that property with care and not carelessly release it to a stranger. That is the command of Sims (supra).
However, in its zeal to avoid the fictitious payee rule, Firemen’s has overlooked the obvious. According to Shaw’s affidavit, which Firemen’s has presented to the court and vouched for, the proceeds of the checks belonged at their inception to Chase absolutely. They were, on any version of the facts, issued in payment of Ladenburg’s obligations to Chase. Chase was never intended to hold the proceeds in trust for Ladenburg. The Sims rule applies only when the bank is required to hold the proceeds for the benefit of the drawer. Pacific Ind. Co. v Security First Nat. Bank (248 Cal App 2d 75), which Firemen’s quotes extensively in its reply brief, makes this distinction clear. Part of the quotation reads (at p 94): " 'Where a check is drawn to the order of a bank to which the drawer is not indebted, the bank is authorized to pay the proceeds only to persons specified by the drawer’ ”. (Emphasis added.) Unfortunately for plaintiff, it is the italicized exception which applies here. In an unreported decision, Aetna Cas. & Sur. Co. v Citibank, N. A. (Supreme Ct, New York County, Index No. 10979/76), this court by Mr. Justice Bloom, held: *616 "Plaintiff relies on the line of cases following Sims v. United States Trust Co., (103 N. Y. 472), which hold that where a bank is the payee of a check other than in payment of an obligation owed to it, it is bound to hold the funds represented thereby subject to the direction of the drawer.” (Emphasis added.) Thus, it was Chase and not Ladenburg who was cheated by Shaw.
Ladenburg’s obligation to Chase is the subject of much confusion but was not fictitious. Firemen’s has given Chase a copy of a letter which Chase wrote to Ladenburg in 1973, demanding certain sums as interest on bonds. The amounts and dates tally only haphazardly with Ladenburg’s checks to Chase. Chase complains that the first indication it had of this claim was the service of the summons and complaint. It claims that, the matter being so old, it can find no record of the transactions, that it has only partial deposit records of Shaw and that they do not show the deposit of the checks in suit. The affidavit of Ladenburg’s chief financial officer makes no effort to explain the financial relations between Ladenburg and Chase.
It may be that plaintiff’s assignor had some other cause of action against Chase, e.g., if Chase, ignorant that the Shaw checks were intended for it, billed and received a second payment from Ladenburg for the same obligation. However, the bank did not become liable to plaintiff’s assignor because it paid to Shaw the proceeds of checks originally payable to the bank.
Because of the disposition the court makes of this matter, no other issues argued by the parties are considered. Firemen’s motion for summary judgment is denied. Chase is granted summary judgment dismissing the complaint upon its application and CPLR 3212 (subd [b]).