OPINION OF THE COURT
Richard S. Lane, J.
In this action plaintiff sues multiple defendants for negli *63 gence, conversion and money had and received arising out of defendants’ alleged misappropriation of the proceeds of checks made payable to defendants by plaintiffs assignor. Answering defendants deny plaintiffs allegations and some of them assert affirmative defenses including holder in due course.
In these motions, No. 18 of June 17, 1986, No. 20 of June 24, 1986 and No. 3 of July 29, 1986, defendants E. J. Audi, Inc. and Metropolitan Opera Association, Inc. seek leave to amend to also assert affirmative defenses including holder in due course, and plaintiff and defendants American Express Company, E. J. Audi, Inc., Phillips Son & Neal, Inc., Metropolitan Opera Association, Inc., and Zanders Auto Rental Service, Inc. move and cross-move for summary judgment. These motions were originally returnable before Justice Edward Greenfield in IAS Part 4, were reassigned to me by order of Justice Xavier C. Riccobono dated June 2, 1987, and are now combined for disposition.
The facts are substantially undisputed. Stratford Skalkos, former manager of Import/Export Transportation for plaintiffs assignor, Avon Products, Inc. (hereinafter sometimes Avon), had authority to requisition checks up to $25,000. Between April 1977 and June 1980 he exercised that authority to obtain checks totaling $162,538.65 which were delivered to defendants in satisfaction of his personal obligations and which were negotiated by defendants without inquiry. Of the requisitions and checks involved in these motions, with one exception, he engaged in creative reformation of the names of the intended recipients. For example, checks were made payable to Amerex Corp., E. Jaudi, Inc., Phillips Auctgullert Co., Metropolitan Oprtg. Co., and Zanders Carting, Inc. Upon discovery Avon submitted proof of loss to plaintiff under its fidelity bond, was indemnified by plaintiff less the deductible and perhaps less a partial reimbursement by Mr. Skalkos or his father, and assigned its rights to plaintiff.
An employee fraudulently inducing his employer to issue checks which are then used for the employee’s personal purposes is certainly not a unique fact pattern. Yet, surprisingly, there are no reported New York cases cited or found which deal with its civil (as opposed to criminal) consequences. And the one case found in the Federal District Court for the Southern District of New York leaves the matter incompletely resolved.
Whether defendants were holders in due course of the *64 checks taking free of all defenses is concededly the dispositive issue between the parties. If the answer is affirmative, they could not bé liable for any tortious conduct and the causes of action for negligence and conversion would fail. And, in the cause of action for money had and received, which, although designated an action at law, is founded on equitable principles, it could not be against good conscience to allow them to keep the money. Between innocent parties — defendants who furnished goods and services and Avon whose lax supervision of middle management made the fraud possible — Avon should bear the loss (see, Federal Ins. Co. v Groveland State Bank, 37 NY2d 252, 258).
To set the stage for discussion and determination of holder in due course status, the motions to amend are granted. Perhaps, under the circumstances, no affirmative defense is necessary (CPLR 3018 [b]). In any event, however, no prejudice has been shown, and it would be unseemly to have different results among similarly situated defendants on the basis of a pleading technicality.
Further to set the stage for discussion and determination of the holder in due course status, I hold that the creatively tailored names of payees on the checks are no bar. Of course, as contended by plaintiff, one cannot be a holder in due course unless one is first a holder, and a holder is defined in UCC 1-201 (20) as a possessor of an instrument drawn to his order or to bearer or in blank. It does not follow, however, as contended by plaintiff, that the variation in names of payees precludes defendants from becoming holders as so defined. To the extent that there was a mere misspelling or other minor error, the explanation lies in UCC 3-203. The payee may endorse in the misspelled or erroneous name or its own or both as required by the party giving value for the instrument (see, Northern Trust Co. v Chase Manhattan Bank, 582 F Supp 1380, 1385, affd 748 F2d 803). To the extent that there was a fictitious entity, the explanation lies in UCC 3-405 (1) (c). Anyone may endorse. It is in effect a bearer instrument (see, Cohen v Lincoln Sav. Bank, 275 NY 399, 406; see, Firemen’s Ins. Co. v Chase Manhattan Bank, 102 Misc 2d 613, 615).
Plaintiff argues that these sections merely enable the possessor to pass good title to a third party by endorsement. Plaintiff misses the point. Good title can be passed by endorsement because the instrument is payable to the order of endorser or to bearer as the case may be.
*65 A holder in due course is a holder who takes an instrument for value, in good faith, and without notice of any defense or claim to it, and a payee may be a holder in due course (UCC 3-302). Clearly defendants took for value — the debts owed to them by Mr. Skalkos. Just as clearly defendants took in good faith which is defined in UCC 1-201 (19) as honesty in fact. Concededly, defendants knew that Avon’s corporate checks were being used to satisfy Avon’s employee’s personal obligations. Is that enough to constitute notice of a defense or claim?
Notice is given, among other ways, if there is knowledge of such facts that taking the instrument amounts to bad faith (UCC 3-304 [7]). This provision was added to the official UCC text by New York to ensure the continuance of the previous subjective standard in this State (Negotiable Instruments Law § 95). The language used is "knowledge” not reason to know. There is no duty of due care or vigilance to discover facts. And the facts known must do more than merely arouse suspicion. They must be facts ignorance of which amounts to dishonesty. In other words "bad faith” is the opposite side of the coin from "good faith” as defined in UCC 1-201 (19) (Chemical Bank v Haskell, 51 NY2d 85; Hall v Bank of Blasdell, 306 NY 336; Manufactures & Traders Trust Co. v Sapowitch, 296 NY 226; Indyk v Habib Bank, 694 F2d 54; Banco Mercantil v Nava, 120 Misc 2d 517).
Plaintiff asserts that knowledge that Mr. Skalkos was paying his personal debts with his employer’s corporate checks was enough to put defendants to inquiry. In support plaintiff relies on a long line of authority stemming from the seminal case of Sims v United States Trust Co. (103 NY 472; Federal Ins. Co. v Groveland State Bank, 37 NY2d 252; Arrow Bldrs. Supply Corp. v Royal Natl. Bank, 21 NY2d 428; Munn v Boasberg, 292 NY 5; Key Appliance v National Bank, 75 AD2d 92; Matteawan Mfg. Co. v Chemical Bank & Trust Co., 244 App Div 404, mod 272 NY 411; Borrello v Perera Co., 381 F Supp 1226, affd 512 F2d 1380; Fidelity & Cas. Co. v Hellenic Bank Trust Co., 181 Misc 40, affd 181 Misc 44; Alpert v City Motor Sales, 194 Misc 909).
In most of these cases the issue is not holder in due course but rather the duty of due care owed by a bank pursuant to UCC article 4. More significantly in virtually all of these cases there is no preexisting debt or obligation to which the bank or other payee is applying the proceeds. As Justice Richard *66 Wallach astutely pointed out in Firemen’s Ins. Co. v Chase Manhattan Bank (102 Misc 2d 613, 615-616, supra) this is the key to the rule of Sims (supra), and its progeny. The bank or other payee is receiving funds without instructions from the drawer as to purpose. When the drawer’s agent delivering the instrument seeks to use the proceeds for his own personal benefit, failure to inquire of the drawer is willful ignorance of fact. Indeed it is more; it is connivance which can be equated with bad faith or dishonesty.
Even in Munn v Boasberg (supra) and in Alpert v City Motor Sales (supra), an Albany City Court case which sedulously followed Munn, although there was a preexisting obligation, the drawer of the check was a complete stranger to the payee. But I do not rely on such a fine distinction. In view of the clear expository language of Judge Wachtler in Chemical Bank v Haskell (supra), in my opinion, Munn is an aberration which would not be decided in the same manner today.
Far different is the situation of a supplier of goods or services to an individual who is paid with a corporate check. The funds are being applied to a preexisting debt. The drawer of the check is not a stranger but is known to be the individual’s employer. It is an everyday occurrence in the business world. Employers often help an employee to maintain a residence as an inducement to continued employment in an area where living expenses are high. Employers often pay for the entertainment of customers by an employee. Employers often pay for travel and transportation expenses of an employee. Directly in point is Travelers Indem. Co. v American Express Co. (559 F Supp 452, 453), wherein Judge Duffy states: "Plaintiff’s contention that the continuous payment of Ms. Rodriguez’s personal bills is sufficient to create AmEx’s notice of defenses is totally unavailing”.
In Travelers (supra) Judge Duffy declined to give defendant summary judgment because he had a reservation about Ms. Rodriguez’s possible status as a fiduciary under UCC 3-304 (2). He also had a reservation about the possibility that AmEx might be subject to the defense of fraud in the inducement under section 3-305 (2) because it dealt regularly with the drawer.
With respect to fiduciary status Judge Duffy was much too cautious. Ms. Rodriguez was an accounts payable clerk. Mr. Skalkos was a middle manager. It wouldn’t matter, however, if she or he were president. A fiduciary is a term derived from *67 Roman and civil law to describe a person holding the position of a trustee or analogous position who acts on behalf of and for the benefit of another to whom he owes absolute trust, confidence, candor and scrupulous good faith (Black’s Law Dictionary [5th ed]). Other examples are directors, executors, administrators, conservators, and receivers. Employees, both high and low, of course work for another, the employer, but the distinction is that they act in the name of the employer pursuant to contract, whereas a fiduciary acts in his own name pursuant to law.
With respect to dealing directly with the drawer, Judge Duffy may have been prescient. The employer in Travelers (supra) sent monthly remittances to American Express covering the corporate account and the accounts of Ms. Rodriguez and four other employees. In this case defendants were completely insulated from Avon. They dealt only with Mr. Skalkos who, although generally an agent for Avon, was here acting outside the scope of his employment.
I hold that defendants were holders in due course. Accordingly, plaintiff’s motions for summary judgment are denied, and defendants’ motions for summary judgment are granted.