OPINION OF THE COURT
Kaye, J.
Stratford Skalkos, formerly manager of the import/export transportation department of Avon Products, Inc., had authority to requisition checks up to $25,000 on his signature alone. For nearly three years, Skalkos used that authority to perpetrate a fraud on Avon, by requisitioning corporate checks totaling $162,538.65 to pay his own debts. This case represents an effort to recover a portion of those proceeds from defendant payees.
Skalkos followed a simple pattern: on check requisitions to Avon he altered the names of the payees just enough to obscure immediate recognition by his employer yet remain in the range of apparent clerical error; he meticulously but fictitiously explained each expenditure in the requisitions as relating to freight; and he had Avon route the checks to him instead of following the more usual procedure of having the corporation transmit the checks to the named payees. Fifteen Avon checks, for example, were paid to defendant American *158 Express Company — the largest recipient of the purloined funds. On their face the checks were payable to "Amerex Corp., 770 Broadway, New York, NY 10003.” Each check requisition submitted by Skalkos to Avon explained those charges as relating to particularized shipping expenses. After Avon routed the checks to Skalkos, he transmitted them to American Express to pay his own credit card bills.
Similarly, defendant Metropolitan Opera Association, Inc. on three Avon checks became "Metropolitan Opng. Co.,” "Metropolitan Opptg. Inc.” and "Metropolitan Oprtg. Co.” By the movement of a letter of the alphabet, defendant E.J. Audi, Inc. became "E. Jaudi, Inc.” on two checks; it was accurately named on the third Avon check it received. While each of the 10 Avon checks to defendant Zanders Auto Rental Service used the name "Zanders,” that name variously became "R. Zanders Crtg. Inc.,” "R. Zanders Carting Inc.,” "Zanders Carting Inc.,” and "R. Zanders Crete, Inc.”[1] Defendant Phillips Son & Neale, Inc. (an auction gallery) received one Avon check, containing the name Phillips but payable to "Phillips Auctgullert & Co.” As with American Express, the recipients’ addresses appeared beneath their names on the face of the checks. In each instance, defendants credited the proceeds against Skalkos’ existing personal indebtedness to them, for credit card charges, an opera subscription, apartment furnishings, car service and Oriental rugs purchased at auction. There is no assertion that any of the defendants was actually aware of Skalkos’ scheme.
Plaintiff insurer, as Avon’s subrogee, brought this action against defendants for conversion, money had and received, and negligence. On cross motions for summary judgment, Supreme Court granted defendants’ motions, concluding that defendants were holders in due course and thus took the checks free of any claims or defenses (136 Misc 2d 62). The Appellate Division affirmed, without opinion, and we granted plaintiff leave to appeal.
The dispositive issue is whether defendants were holders in due course. The holder in due course doctrine — which has particular importance in commercial transactions like those at issue here — has as its objective encouraging and facilitating the ready transaction of negotiable instruments, central to our credit economy; people can rely on the fact that negotiable *159 instruments in the hands of good-faith purchasers will be paid according to their tenor and intent and not paid otherwise (see, Cohen v Lincoln Sav. Bank, 275 NY 399, 412). Holder in due course status advances that objective by providing that persons in that category take free of virtually all claims and defenses (UCC 3-305 [1], [2]). In the circumstances presented, we conclude that defendants were holders in due course, free of Avon’s claims, and we therefore affirm the Appellate Division order dismissing the complaint.
A payee may become a holder in due course if it meets the conditions set forth in the Uniform Commercial Code (UCC 3-302 [2]). The code defines a holder in due course as a (1) holder (2) of a negotiable instrument (3) who took it for value, (4) in good faith, and (5) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of another (UCC 3-302 [1]). Satisfaction of these requirements is all that is necessary for a payee to obtain the special protections of a holder in due course (see, Saale v Interstate Steel Co., 19 NY2d 933; 1 White & Summers, Uniform Commercial Code § 14-7, at 718-719 [3d ed — Practitioner’s]).
Undisputedly, the checks in question are negotiable instruments that were taken by defendants for value and in good faith as those terms are defined in the code (see, UCC 1-201 [19]; 3-303). The points of contention are the first requirement —the “holder” provision — and the fifth — the “notice of claim or defense” provision. We conclude that both requirements were satisfied, and address each in turn.
The Holder Requirement Under the UCC
The threshold status of “holder” requires possession of an instrument “drawn, issued or indorsed to him or to his order or to bearer or in blank.” (UCC 1-201 [20]; see, Marine Midland Bank v Price, Miller, Evans & Flowers, 57 NY2d 220, 224-225; Whaley, Forged Indorsements and the UCC’s "Holder”, 6 Ind L Rev 45 [1972].)
Defendants of course had possession of checks payable to order, but mere possession of order paper does not transform a person into a holder. Unless checks have been drawn to their order, possessors cannot be holders (1 White & Summers, op. cit., § 13-21, at 680). Plaintiff urges that because the checks were made payable to fictitious entities, they were categorically not drawn or issued to defendants or to their order. This is especially so, according to plaintiff, because Avon did not *160 intend for defendants to have the checks; Avon intended that those checks pay the freight charges fraudulently represented on the requisitions completed by Skalkos.
Supreme Court rejected plaintiff’s argument on the strength of UCC 3-203, which authorizes a payee to negotiate an instrument to a third party notwithstanding an erroneous or misspelled name. The court reasoned that the protection of the provision should be extended to the situation at hand. UCC 3-203, however, concerns the validity of endorsements and not the validity of the checks themselves. We reach the same result as Supreme Court — concluding that defendants are holders — but we do so by the application of UCC 3-110, which is addressed to the question when an instrument is payable to order.
A check is payable to order when the instrument specifies the payee with "reasonable certainty.” (UCC 3-110 [1] [c].) That standard is not dependent on the subjective intent of the maker or drawer of the instrument (see, 4 Hawkland & Lawrence, Uniform Commercial Code Series § 3-110:03, at 126). An instrument need not name the payee punctiliously to have been issued to the order of that person; minor errors in a name will not affect the status of holder so long as the person specified is identified with reasonable certainty (see, Northern Trust Co. v Chase Manhattan Bank, 582 F Supp 1380, 1385 [SD NY], affd 748 F2d 803 [2d Cir]; Security State Bank v Baty, 439 F2d 910, 912 [10th Cir]).
Applying this standard, we agree with the conclusion reached by Supreme Court and the Appellate Division: what is involved here is in the nature of minor error or misspelling. Skalkos’ slight alterations of the payees’ names so as to retain their essence yet appear to be clerical errors, coupled with the address of each defendant shown on the face of the checks, plainly identified defendants with reasonable certainty.
Thus, Supreme Court and the Appellate Division correctly concluded as a matter of law that defendants were "holders” under the code.
The Notice Requirement Under the UCC
To be a holder in due course a party must take the instrument "without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.” (UCC 3-302 [1] [c]; see generally, Blum, Notice to Holders in Due Course and Other Bona Fide Purchasers Under *161 the Uniform Commercial Code, 22 BC L Rev 203 [1981].) Plaintiff contends that defendants took the checks from Skalkos with notice of Avon’s claim — in particular, that they took with notice that Avon had not authorized defendants to apply its funds to Skalkos’ personal indebtedness. Essentially three grounds are advanced for this proposition.
First, plaintiff asserts that defendants were on notice of Avon’s claims by virtue of UCC 3-304 (1) (a): "The purchaser has notice of a claim or defense if * * * the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay”. Plaintiff argues that the misnomers were so irregular as to call the validity of the checks into question.
But "[i]t will be rare that an instrument will be so irregular as to call into question its validity, terms or ownership.” (4 Hawkland & Lawrence, op. cit., § 3-304:11, at 432.) Indeed, as explained in the Official Comment, the irregularity contemplated by section 3-304 (1) (a) is "notice to the purchaser of something wrong”. (UCC 3-304, comment 2.) By any measure, the misnomers — correctly portrayed by Supreme Court as minor errors or misspellings — were not irregularities of such magnitude as to put a holder on notice that something was "wrong.”
Second, plaintiff urges that defendants had notice of Avon’s claim against the checks by reason of UCC 3-304 (2), which provides: "The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty.” Plaintiff contends that defendants had actual knowledge that Skalkos was Avon’s fiduciary, and their acceptance of Avon’s checks in satisfaction of personal indebtedness constituted the very sort of notice that UCC 3-304 (2) contemplated, whether or not defendants had actual knowledge of Avon’s claim against the checks. This argument is also without merit.
Assuming for purposes of this summary judgment motion that Skalkos was Avon’s fiduciary, and that this fact was known to defendants, what is essential to plaintiff’s argument is that Skalkos "negotiated” the checks. UCC 3-304 (2) requires as much.
Negotiation is defined in the code as "the transfer of an *162 instrument in such form that the transferee becomes a holder.” (UCC 3-202 [1].) That concept, however, does not include the first delivery or “issue” of a check, although the payee to whom the check is issued may become a holder (see, UCC 1-201 [20]; 3-102 [1] [a]; 3-302 [2]; Brady, Bank Checks ¶ 7.2 [Bailey 6th ed]). “Thus, in the case of order instruments, only the payee or one who signs on his behalf can make the first effective endorsement and negotiate the instrument.” (1 White & Summers, op. cit., § 13-9, at 641.) Accordingly, section 3-304 (2) by its terms is inapplicable where, as here, the alleged fiduciary "uses an instrument drawn by his principal in favor of the holder to pay not the principal’s indebtedness to the holder but his own.” (Blum, Notice to Holders in Due Course and Other Bona Fide Purchasers Under the Uniform Commercial Code, 22 BC L Rev 203, 242-243 [1981].)
We conclude, moreover, that on the undisputed facts Supreme Court and the Appellate Division correctly relied on UCC 3-304 (7), which reads: "In any event, to constitute notice of a claim or defense, the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith.”
The purpose of UCC 3-304 (7) — unique to New York and Virginia — was to require that questions of notice would be determined by a subjective test of actual knowledge rather than an objective test which might involve constructive knowledge (Chemical Bank v Haskell, 51 NY2d 85, 92-93; see also, Lawton v Walker, 231 Va 247, 343 SE2d 335 [construing Va Code Ann § 8.3-304 (7)]).[2] The New York Legislature’s addition of a nonuniform subjective test to the code’s uniform notice provision signals a deliberate, unmistakable choice to give added protection to good-faith purchasers in this State.
Thus, UCC 3-304 (7) demands nothing less than actual knowledge of the claim against the instrument or of facts indicating bad faith in taking the instrument (Chemical Bank v Haskell, supra; First Intl. Bank v Blankstein & Son, 59 *163 NY2d 436, 445; Federal Deposit Ins. Corp. v Russo, 58 NY2d 929, affg for reasons stated at 89 AD2d 575). Holders in due course are to be determined by the simple test of what they actually knew, not by speculation as to what they had reason to know, or what would have aroused the suspicion of a reasonable person in their circumstances (see, First Natl. Bank v Fazzari, 10 NY2d 394, 399).
That defendants knew Avon’s checks were being used to satisfy Skalkos’ personal debts does not constitute actual knowledge of Avon’s claim against the checks, or knowledge of such facts that defendants’ action in taking the checks amounted to bad faith. Skalkos’ transmission of company checks payable to the order of defendants was itself an innocuous act. It did not give defendants notice of any claim by Avon against those checks or betray an ongoing fraud; nor did the application of the checks to Skalkos’ personal indebtedness. As Supreme Court observed, the use of corporate checks to pay employees’ debts "is an every day occurrence in the business world. Employers often help an employee to maintain a residence as an inducement to continued employment in an area where living expenses are high. Employers often pay for the entertainment of customers by an employee. Employers often pay for travel and transportation expenses of an employee.” (136 Misc 2d, at 66.) Defendants themselves in their summary judgment submissions have indicated that they regularly receive payment through corporate accounts for goods or services furnished to individuals.
Checks of this kind may represent an employer’s compensation to its employee or the reimbursement of business expenses (see, 4 Hawkland & Lawrence, op. cit., § 3-304:06, at 425; Spaulding & Sherwood, The Wayward Corporate Check: Notice of Diversion Under the UCC, 18 Cath U L Rev 127, 134, 149 [1968-1969]). That being so, defendants were entitled to conclude that Skalkos had lawfully transmitted the checks to them to discharge the expenses he had incurred. They were not required to surmise that the checks, rather than representing reimbursement or payment for Skalkos’ services by his employer, were in effect stolen (see, Eldon’s Super Fresh Stores v Merrill Lynch, Pierce, Fenner & Smith, 296 Minn 130, 207 NW2d 282). Parties who take commercial paper for value " '[are] not bound at [their] peril to be upon the alert for circumstances which might possibly excite the suspicions of wary vigilance.’ ” (Hall v Bank of Blasdell, 306 NY 336, 341; Chemical Bank v Haskell, supra, at 93-94.)
*164 Thus we conclude as a matter of law that defendants did not have notice of Avon’s claim under UCC 3-304.
Third, plaintiff urges that defendants should be charged with notice, or otherwise deemed to have breached a duty of care, by virtue of a line of cases typified by Sims v United States Trust Co. (103 NY 472). In the Sims line of cases, a bank’s customer (having no indebtedness to the bank) drew checks to the order of the bank, intending that the proceeds be deposited in its account, but a third party diverted the proceeds. It has long been the rule that a depositary bank cannot disburse its customer’s funds without inquiry of the customer (id., at 475-476; Federal Ins. Co. v Groveland State Bank, 37 NY2d 252, 258; Arrow Bldrs. Supply Corp. v Royal Natl. Bank, 21 NY2d 428, 431; Brady, op. cit., ¶ 13.3; 5A Michie, Banks and Banking § 183, at 563-564 [1983]). A bank that ignores this rule, choosing to treat a customer’s check payable to the bank as instead payable to the bearer, is negligent as a matter of law (see, Federal Ins. Co. v Groveland State Bank, supra; Whaley, Negligence and Negotiable Instruments, 53 NC L Rev 1, 15-16 [1974]; cf., Banking Law § 9; New York Metro Corp. v Chase Manhattan Bank, 52 NY2d 732).
But the bank deposit rule exemplified by Sims has no application in the present case, where the issue is payment of an obligation for goods and services, not deposit in a bank account. This distinction is important. A bank and its depositor have the contractual relationship of debtor and creditor, with an implicit understanding that the bank will pay out a customer’s funds only in accordance with its instructions (see, Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank, 57 NY2d 439, 444; Tonelli v Chase Manhattan Bank, 41 NY2d 667, 670; see also, Underpinning & Found. Constructors v Chase Manhattan Bank, 46 NY2d 459). There was no such relationship between Avon and defendants (see, Firemen’s Ins. Co. v Chase Manhattan Bank, 102 Misc 2d 613). When defendants received Avon’s checks, issued to their order and regular on their face, they had no statutory or common-law duty to stop their business operations in order to ask Avon its purposes in issuing the checks to them before applying the proceeds against existing indebtedness.
While there are a few cases that have applied the Sims rationale outside the banking context (see especially, Munn v Boasberg, 292 NY 5, and Rochester & Charlotte Turnpike Rd. Co. v Paviour, 164 NY 281), those cases must be read in the *165 light of the Uniform Commercial Code. Simply put, UCC 3-304 (7) precludes the possibility that nonbank creditors like defendants will be held to the strict duty of inquiry that may be required of bank payees (Brady, op. cit., ¶ 13.3). That defendants, in retrospect, might have made further inquiry or might even have been careless when they accepted Avon’s checks to pay Skalkos’ debts (as plaintiff urges), is insufficient to deny them the status of holder in due course; there is no proof either of their actual knowledge of Avon’s claim against those checks or of such facts that their action in taking the checks amounted to bad faith.
Finally, the result we reach is fully consistent with the letter and spirit of the check fraud rules contained in the Uniform Commercial Code. It promotes the policy favoring ready negotiability of commercial paper, assuring that good-faith purchasers need not stand as insurers of the honesty of a drawer corporation’s employees. And it assigns losses by the relative responsibility of the parties, allocating liability to the party best able to prevent them (see, Prudential-Bache Sec. v Citibank, 73 NY2d 263, 269; Comment, Allocation of Losses from Check Forgeries Under the Law of Negotiable Instruments and the Uniform Commercial Code, 62 Yale LJ 417 [1953]). As among the parties to this dispute Avon — whose misplaced trust or inattention enabled its employee to misappropriate funds, undetected, for several years — was plainly the party best able to prevent the losses and to protect itself by insurance. The losses were therefore properly allocated to Avon, not defendants.
Accordingly, the order of the Appellate Division dismissing the complaint should be affirmed, with costs.
Chief Judge Wachtler and Judges Titone, Hancock, Jr., and Bellacosa concur; Judges Simons and Alexander taking no part.
Order affirmed, with costs.

. Zanders’ undisputed evidence indicates that its "proper corporate name” is "R. Zanders Rental Service, Inc.”

. This nonuniform provision, recommended by the New York Law Revision Commission, was received with misgivings by commentators (Note, Notice and Good Faith Under Article 3 of the Uniform Commercial Code, 51 Va L Rev 1342, 1353-1354 [1965]; Braucher, UCC Article 3 — Commercial Paper — New York Variations, 17 Rutgers L Rev 57, 67-68 [1962]; Penney, A Summary of Articles 3 and 4 and Their Impact in New York, 48 Cornell L Rev 47, 59-61 [1962]; Penney, New York Revisits The Code: Some Variations in the New York Enactment of the Uniform Commercial Code, 62 Colum L Rev 992, 998-1000 [1962]).