GINO'S OF CAPRI, INC., Appellant, v CHEMICAL BANK (N.A.), Respondent.

First Department, January 12, 1993

## APPEARANCES OF COUNSEL

*Howard G. Seitz* of counsel *(O'Connor, Murphy, Ryan & Seitz,* attorneys), for appellant.

*Laura Proske O'Hara* of counsel *(Eileen J. Berkman* with her on the brief, attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

Plaintiff Gino's of Capri, Inc. maintained a bank account at Chemical Bank (N.A.) for the payment of employees' Federal withholding taxes. During the period from January 1, 1986 through April 30, 1990, Joseph Costello, Gino's independent accountant, prepared a number of corporate checks made

payable to Chemical Bank, which Gino's president or other authorized signatory signed, believing them to have been drawn for deposit and, ultimately, the payment of payroll taxes. In fact, Costello used the checks, totalling $317,932.81, to pay for his personal credit card charges at Chem Credit Services and Chemical Bank Delaware, credit card companies and affiliates of Chemical Bank. Costello mailed the checks together with his monthly statements to Chemical, which endorsed the checks and accepted them in payment of his credit charges with its affiliates. Costello's scheme went undetected for four years.

■ Plaintiff thereafter brought this action against Chemical to recover the misappropriated $317,932.81, alleging that the bank was negligent in accepting its depositor's checks and applying the proceeds therefrom to the payment of Costello's personal indebtedness to the bank's subsidiaries. Chemical moved for summary judgment dismissing the complaint, citing *Hartford Acc. & Indem. Co. v American Express Co.* (74 NY2d 153) for the proposition that since it is common practice for employers to pay the expenses of their employees, where an employer's corporate check is sent in payment of an employee's bills, absent an irregularity in the form of the check or indication that the employee is engaging in embezzlement, there is, as a matter of law, no liability on the part of the payee receiving and accepting such payment. Plaintiff cross-moved for summary judgment. The IAS Court granted summary judgment dismissing the complaint and denied the cross motion, finding that "[t]he facts here put the matter entirely within the ambit of *Hartford Acc. & Indem. Co. v. American Express*". We agree and affirm.

In *Hartford Acc. (supra),* a faithless employee of the plaintiff's subrogor, a corporation, with authority to requisition checks up to $25,000 on his signature alone, used that authority to requisition corporate checks totalling $162,538.65 to pay his own debts. He was able to avoid detection by a slight alteration of the names of the payees and a fictitious explanation of each expenditure as relating to a freight charge. As an example, checks paid to the defendant American Express Company were on their face made payable to " 'Amerex Corp., 770 Broadway, New York, NY 10003' " *(supra,* at 158). Instead of following its usual procedure of having the corporation transmit these checks directly to the payees, the employee had the corporation route the checks to him. He then forwarded them to the payees in payment of his own personal

bills. The Court held that the payee defendants were holders in due course, free of the employer drawer's claims. It found that they had "holder" status because they were in possession of checks which, despite the slight alteration of the payees' names, were, by their terms, payable to their order and they specified the payees with "reasonable certainty" (UCC 3-110 [1] [c]). In rejecting the plaintiff's argument that the payees did not enjoy holder in due course status under UCC 3-302 (1) (c) since they took the checks from the employee with notice that the employer had not authorized them to apply its funds to the employee's personal indebtedness, the court pointed approvingly to the motion court's observation that the use of corporate checks to pay the debts of employees " 'is an every day occurrence in the business world' " (74 NY2d supra, at 163, quoting 136 Misc 2d 62, 66).

Plaintiff argues that this case is not controlled by *Hartford Acc. (supra)*, because, unlike the situation there, the payee is not a vendor of goods or credit card company but, rather, a bank, which, under the rule enunciated in *Sims v United States Trust Co.* (103 NY 472), had the duty, after receiving the checks, to see that their proceeds were not improperly disbursed. In *Sims,* the plaintiff's testator, Dr. Sims, delivered a $5,000 check, drawn on another bank to the order of the defendant bank, to one Crowell with directions to deposit the check to Dr. Sims' credit with defendant. Instead, Crowell delivered the check to defendant and requested and received from it a certificate of deposit payable to himself as trustee for Dr. Sims, the proceeds of which he shortly withdrew and converted to his own use. The Court held that, "having accepted the office of [receiving the deposit, the defendant bank] was bound to keep Dr. Sims' moneys, until it received his directions to pay them out. The language of the check making the funds payable only upon the order of the defendant imposed upon it the duty of seeing that they were not, through its agency, improperly disbursed after it had received them." *(Supra,* at 476.)

Plaintiff argues that under *Sims (supra)* and its progeny *(see, e.g., Arrow Bldrs. Supply Corp. v Royal Natl. Bank,* 21 NY2d 428; *Federal Ins. Co. v Groveland State Bank,* 37 NY2d 252), Chemical had a duty to make inquiry of Costello since the check he delivered in payment of his personal charges was drawn on the account of another customer, plaintiff, which had no indebtedness to the bank. The difficulty with this argument is that, by plaintiff's own admission, none of the

checks at issue were deposited with Chemical, as intended, or even delivered for such purpose. Instead, they were sent by Costello to Chemical together with Costello's monthly credit statements from Chemical's credit card affiliates, Chem Credit Services and Chemical Bank Delaware. Thus, this case is distinguishable from *Sims,* where "[t]he use of the defendant's name as payee of the check indicated the drawer's intention to lodge the moneys in its custody and place them under its control, and nothing further than this was inferable from the language of the check." (103 NY, *supra,* at 476.) Here, the facts do not lead to the same inference. The checks were delivered to Chemical, the payee, obviously acting as a collection agent for its credit card affiliates, together with credit card statements showing charges for goods and services, to the payment of which, it could readily be inferred, the checks were intended. Thus, the situation presented here is far different from that in *Sims.*

As the Court of Appeals noted in *Hartford (supra),* distinguishing the issue presented there from the one in *Sims (supra),* "[T]he bank deposit rule exemplified by *Sims* has no application in the present case, where the issue is payment of an obligation for goods and services, not deposit in a bank account * * * A bank and its depositor have the contractual relationship of debtor and creditor, with an implicit understanding that the bank will pay out a customer's funds only in accordance with its instructions [citations omitted]." (74 NY2d, *supra,* at 164.) There is, of course, an important reason for distinguishing between a credit card payment and bank deposit. As a practical matter, requiring payees receiving credit card and similar personal payments to make inquiry upon receipt of a check drawn on another's account would impose on these entities an undue burden, which, given the reality that employers' checks are frequently used to pay employee bills, would far outweigh any resulting benefit in detecting the isolated instance of embezzlement. On the other hand, as recognized in *Sims* and its progeny, the deposit of an employer's check payable to a bank into a personal account by someone "without either actual or apparent authority to represent the drawer" *(Arrow Bldrs. Supply Corp. v Royal Natl. Bank,* 21 NY2d, *supra,* at 431) is not a common occurrence but one that would naturally trigger inquiry.

Nor is it significant, as plaintiff argues, that although the checks were made payable to Chemical, they were used to pay the charges of its credit card affiliates, Chem Credit

Services and Chemical Bank Delaware. In *Hartford Acc. (supra)*, as noted, the dishonest employee, to obscure his embezzlement, altered the names of the payees to whom he was sending the checks. Notwithstanding, the Court of Appeals rejected the argument that those payees were not "holders" because the checks were not drawn to or issued to the defendants or their order. Although cast in a somewhat different light, since Chemical is being sued, not the recipients of the proceeds of the checks, Chemical's credit card affiliates, plaintiff's claim is the same as the argument rejected in *Hartford Acc.* That difference, however, does not serve to impose liability on Chemical, the named payee. Those paying credit card or other personal charges by check often abbreviate names, leave off suffixes such as "Inc." or "Corp." or otherwise misdescribe in some small manner the name of their creditors. The flow of commercial transactions would be seriously impeded if technical errors in the naming of a payee necessitated the rejection of such tenders. As the Court in *Hartford Acc.* noted, "An instrument need not name the payee punctiliously to have been issued to the order of that person; minor errors in a name will not affect the status of holder so long as the person specified is identified with reasonable certainty [citations omitted]." (74 NY2d, *supra*, at 160.) The difference between Chemical and the precise names of the Chemical credit card affiliates is less significant than the difference between the names of the defendants and the payees in *Hartford Acc.* Here, as in *Hartford Acc.*, Chemical was described with "reasonable certainty" within the meaning of UCC 3-110 (1) (c) so as to confer holder status on it.

■ As for plaintiff's argument that since Chemical, not the affiliates, endorsed the checks, "there is no way [it] could have known, in the ordinary course, that these funds were not deposited to its account", had plaintiff properly reviewed its statements for that account over the four-year period, as it is required to do *(see, Arrow Bldrs. Supply Corp. v Royal Natl. Bank, supra,* 21 NY2d 428), it would, of course, have realized that its checks were being diverted. While that may well have been the faithless Costello's obligation, which, for obvious reasons, he would not have diligently performed, the loss ensuing from such failure cannot be shifted to Chemical.

Accordingly, the order of the Supreme Court, New York County (Edward J. Greenfield, J.), entered September 20, 1991, granting defendant's motion for summary judgment dismissing the complaint and denying plaintiff's cross motion for

summary judgment, should be affirmed, with costs and disbursements.

CARRO, WALLACH, KUPFERMAN and KASSAL, JJ., concur.

Order of the Supreme Court, New York County, entered September 20, 1991, granting defendant's motion for summary judgment dismissing the complaint and denying plaintiff's cross motion for summary judgment, is affirmed, with costs and disbursements.