WILLIAM E. SAALE, Doing Business as TESTED METALS INTERNATIONAL COMPANY, Respondent, v. INTERSTATE STEEL CO. INC., et al., Appellants.

First Department, December 20, 1966.

*Copal Mintz* of counsel (*Nathan H. Herman*, attorney), for appellants.

*Fred Lichtblau* for respondent.

Breitel, J. P.  Defendants, maker and individual indorser of a promissory note, the second in a series of three, each in the amount of $15,062.19, appeal from summary judgment granted plaintiff holder and payee.  The notes were given in purchase of a quantity of damaged steel coil, shipped to plaintiff, and sold to defendant corporation as salvageable goods by plaintiff's insurer.  Defendants have a viable contention that the goods sold to them did not meet the description as advertised and sample as inspected.  The issue is whether the defense is available against plaintiff holder-payee.

Special Term held that plaintiff was a holder in due course although the payee of the note and that it was entitled to summary judgment pursuant to CPLR 3212.  The order and judgment should be affirmed.

In August, 1965 plaintiff purchased a quantity of steel coil from a Japanese supplier for intended resale.  They arrived from Japan badly damaged.  Plaintiff promptly notified its insurer's agents, who had a surveyor confirm the condition of the goods.  The insurer's agents informed plaintiff that the insurer would pay the claim in full and the surveyor thereupon notified plaintiff orally and in writing that, in order to defray the liability of the insurer, the goods would be sold to the highest bidder in order to complete a salvage sale.  The surveyor noted that '' It is understood that all our actions in this matter are without prejudice for the rights of whom it may concern and subject to the terms and conditions of the policy of insurance. ''  The surveyor advertised the sale on an '' as is, where is '' basis with right of preliminary inspection of the goods at a specified place.  Defendant (the corporation) was the highest bidder and its bid was accepted.  Except that the bidder was instructed to make its check payable to plaintiff, the advertisement for the sale and the invoice did not specify plaintiff as the seller, and the invoice recited that the sale was for the account of whom it may concern.

Because defendant was interested in credit terms, the surveyor

advised that it would be satisfied with any terms arranged with plaintiff. Plaintiff agreed to a $50,000 cash payment and the balance of the price in the three promissory notes, making a total of $95,186.57. In due course, plaintiff signed a release of the goods to defendant.

The first note was paid at maturity. The second note was dishonored, defendant's buyer having in the meantime rejected the goods as not in accordance with the terms of its purchase from defendant. Defendant then complained that the goods delivered to it were not the same as those it had inspected; they were wrapped differently; they were in markedly different and much worse condition; and, most important, they had been stored in another building across the street from the warehouse in which defendant had inspected the goods it purported to purchase. In short, defendant claimed and still claims a fraudulent substitution of inferior goods.

The court is in entire agreement that there would be a triable issue of fact whether defendant was the victim of a fraudulent switch of goods and that the " as is, where is " terms of the bidding offer would not preclude a remedy against a proper person. The only issue in dispute is whether plaintiff is such a proper person and subject to the defense in an action on the note.

There is no suggestion anywhere that plaintiff played any knowing role in the underlying transaction. It was an importer of resold damaged goods it had never seen or sold after rejection by its buyer. Plaintiff did not select the surveyor. Its insurer took over the matter instantly on complaint, taking delivery of the goods from plaintiff's buyer at the warehouse, and thereafter arranging for the salvage sale without any participation by plaintiff. Only after the sale and because defendant sought credit was plaintiff brought back into the picture. After checking the credit of defendant it agreed to a partial extension of credit. If it had not, it would have been fully paid. It thereupon received the three notes as payee. The more particularized issues now become whether because it was the payee it may not be a holder in due course, and whether, even if a payee may be a holder in due course, that status is barred to one who paid value, acted in good faith, and took without notice of defect or defense but who retained a technical title to the goods being sold by its insurer in a salvage sale.

The rule is an old one in this State that a payee of a negotiable instrument may be a holder in due course (e.g., *Miller* v. *Campbell,* 173 App. Div. 821, 824, affd. 223 N. Y. 728; *Bergstrom* v. *Ritz-Carlton Rest. & Hotel Co.,* 171 App. Div. 776, 779–780, app. dsmd. 220 N. Y. 569; *First Nat. Bank & Trust Co. of Elmira*

v. *Conzo,* 169 Misc. 268; *South Shore Securities Co.* v. *Goode,* 5 Misc 2d 972, 974–975; see, generally, Anno. Payee-Holder in Due Course, 2 ALR 3d 1151 *et seq.*) The rule has now been made uniform and explicit by the adoption of the Uniform Commercial Code (§ 3–302). The official comments to the code state the conditions for the rule, which are the same as they were under the majority rule before the code was enacted. The comments say: " The position here taken is that the payee may become a holder in due course to the same extent and under the same circumstances as any other holder. This is true whether he takes the instrument by purchase from a third person or directly from the obligor. " (To the same effect, see *Bergstrom* v. *Ritz-Carlton Rest. & Hotel Co., supra*; see, also, 41 N. Y. Jur., Negotiable Instruments, § 334; Anno. Payee-Holder in Due Course, 2 ALR 3d 1151, 1159, *supra*; Whitney, Law of Modern Commercial Practice [2d ed.], § 461; cf. *Munn* v. *Boasberg,* 292 N. Y. 5, 9.)

The conditions, generally, for a holder in due course are that he take the instrument for value, in good faith, before maturity, and without notice of defect or other defense (Uniform Commercial Code, § 3–302, subd. [1]; 41 N. Y. Jur., Negotiable Instruments, § 334). None disputes plaintiff gave value; none claims bad faith on the part of plaintiff; and there is no suggestion that plaintiff had any notice of any fact leading to the chicanery allegedly practiced or that it had any part in the chicanery. Of course, on no view of the facts could plaintiff have been benefited by the fraudulent switch, or, for that matter, by whatever price the steel was sold. Under such circumstances, plaintiff satisfies the stated conditions for a holder in due course and therefore is one. The fact that for certain technical purposes the surveyor, who was otherwise the agent of the insurer, was the agent of plaintiff solely for the purpose of implementing the transfer of plaintiff's nominal ownership makes no difference (see illustrations listed in the official comment to Uniform Commercial Code, § 3–302, subd. [2], but esp. illustrations a. and b. involving the purchase of goods from the payee). Text writers in the past have suggested that the test might be the remoteness from the holder of the instrument of the actual underlying transaction (2 Daniels, Negotiable Instruments [7th ed.], § 884, p. 930). But that is hardly a definite enough test and would seem to be displaced by the more definitive test of the *Bergstrom* case (*supra*) and the comments by the draftsmen of the Uniform Commercial Code. No one has suggested that being a party to the underlying transaction bars the holder from being one in due course, and the other illustrations to subdivision (2) of section 3–302 provided by the draftsmen refute this view. Moreover,

writers on the subject have cautioned against any mechanical application of the rule, on the one hand to all payees, and on the other hand the preclusion of the rule from all payees with a definable relation to the underlying transaction (Anno. Payee-Holder in Due Course, 2 ALR 3d 1159, 1167–1168, *supra*; Farnsworth, Commercial Law, 32 N. Y. U. L. Rev. 1401, 1404–1405).

Hence, it is of no help to conclude, if that is even correct, that plaintiff retained title to the goods. The realities were that the insurer had taken over by way of an inchoate assumption and the payment from the buyer of the salvage goods was simply to be either a payment in partial discharge of the insurer's liability or a measure of it. The technicalities were only of interest between insurer and insured. As for the sale it was between the insurer and its agents and the buyer. The transmittal of the notes from the buyer to the plaintiff was in discharge of an arrangement between the insurer and insured. The situation would have been no different if there had been a formal written assignment of title to the goods from the plaintiff (or its complaining customer) to the insurer.

Finally, on any view there is no issue of fact between plaintiff and defendant, only a question of law as to the effect of plaintiff's tenuous relation to the goods being sold at salvage sale by its insurer barring it from status as a holder in due course. Defendant does not contradict any evidentiary fact offered by plaintiff. Its real factual argument is with those who allegedly cheated it, or their principals, and who are not in this case. Plaintiff, of course, is in no position to contradict defendant's assertions as to a fraudulent switch and does not do so. Hence, plaintiff's position is vulnerable only if, as a matter of law, despite its innocence of participation in any fraudulent switch to inferior goods, the loss to defendant is a defense on the note held by plaintiff.

Accordingly, the order and summary judgment in favor of plaintiff should be affirmed, with costs and disbursements to plaintiff-respondent.

RABIN, J. (dissenting). I would reverse the order appealed from and would deny summary judgment to the plaintiff.

This suit has its origin in the purchase by plaintiff of steel coils which were shipped from Japan. The shipment was insured "against all risks." The plaintiff made a claim on its policy asserting that the goods were damaged during the period of coverage. The insurance company did not contest the claim, but for the sole purpose of fixing the amount of the loss arranged

with plaintiff to sell the coils at auction. Under this arrangement no property rights were given to the insurance company — ownership remaining with the plaintiff.

In furtherance of the sale the corporate defendant* was invited to submit a bid for the merchandise. The invitation to bid had this provision: " This sale is to be on ' as is, where is ' basis for account of ' whom it may concern ' ". The defendant submitted the successful bid. While the terms of sale provided for payment in the full amount by certified or cashier's check prior to delivery, those terms were changed as the result of negotiation between plaintiff and defendant. A down payment of $50,000, and the balance by three promissory notes were substituted in place of cash before delivery.

This suit is brought because of the failure of defendant to pay the second promissory note of that series in the amount of $15,062.19 made payable to the order of the plaintiff.

The defense is breach of warranty, fraud and failure of consideration.

The plaintiff seeks to bar these defenses for two reasons: (1) that it is a holder in due course, and (2) that the sale was made on an " as is, where is basis."

The entire court is in agreement that the " as is, where is " clause does not bar defendants from asserting their claims in the circumstances of the case. However, I do not agree with the majority's conclusion that plaintiff is a holder in due course and, consequently, is insulated from these defenses.

The invitation to bid indicated that the merchandise to be sold was located at a particular warehouse, and invited inspection at that location before submission of bids. The defendant did inspect the merchandise at that location. However, it seems that the shipment was not confined to the merchandise it was invited to inspect, but part of it came from an entirely different location of which the defendant was unaware. It is the defendant's claim that this merchandise, which it was not given an opportunity to inspect, was in a different condition and far inferior than that which was shown to it. It is for that reason that defendant asserts the defenses of fraud, misrepresentation, breach of warranty, and failure of consideration.

If the defendant received what it was invited to inspect, of course, it would be barred by the " as is, where is " clause. But, if it can substantiate its claim that it was shipped merchandise other than what it bought, from a place other than to which it

---

* Unless otherwise indicated the word defendant shall refer to the corporate defendant.

was directed, it would not be so barred. As indicated, the entire court is in agreement in this respect and there is no question but that a triable issue is presented on this question.

However, the majority holds that plaintiff is a holder in due course and any defense with respect to the condition of the merchandise may not be asserted against it. I agree with the majority that a payee of a negotiable instrument may be a holder in due course. Indeed, such rule of law is now codified into statute (Uniform Commercial Code, § 3–302). However, it is equally clear that not every payee is in fact a holder in due course. A distinction must be made between a payee who is a party to the underlying transaction and the payee who is completely separated from the consideration of a note. (See Whitney, Modern Commercial Practices [2d ed.], § 461; *Miller v. Campbell,* 173 App. Div. 821, 824; *First Nat. Bank & Trust Co. of Elmira v. Conzo,* 169 Misc. 268.) Under the facts, as alleged in the affidavits, it cannot be said as a matter of law that plaintiff is in fact a holder in due course so as to make the defenses raised here unavailable against it. On the contrary, it could be said that on the conceded facts, as a matter of law, the plaintiff was not such a holder. However, it is sufficient to defeat summary judgment that there be a triable issue in that respect.

The record strongly indicates that the plaintiff was the principal in the transaction and as such could be responsible to the defendants if the defendants prove their claims. It is of importance to understand that this is not a situation where the insurer is paying the insured the full value of the goods insured, and holds the sale in order to obtain the salvage value of the merchandise. Rather, the sale here was held for the insured, who received the proceeds of that sale — the sale being held merely so that the parties could establish the amount of the loss. Though the sale was arranged by the plaintiff's insurance company, we cannot say as a matter of law that it was not acting as the agent of the insured. Nor is there any indication in this record that the insurer was acting on its own behalf. Consequently, if the insurer or its agents committed any fraud, or misrepresented the articles in any manner, the plaintiff would be responsible as the principal to the transaction. While plaintiff may not have actually participated in the wrongdoings, it is nevertheless responsible for the acts of its agent.

In reaching my conclusion that plaintiff cannot be ruled a holder in due course, I note that title to the goods, which were purchased by the defendant, at all times remained with the plaintiff. While that may not be, in and of itself, sufficient to deprive the plaintiff of the status of a holder in due course, it is some

evidence in support of the contention that the plaintiff was the principal in the transaction and, therefore, not a holder in due course. Indeed, the invitation to bid stated that the sale was to be for the account of " whom it may concern " which, of course, can only refer to the plaintiff. The record permits of the possible conclusion that plaintiff was made aware of every step of the transaction. Plaintiff's involvement is clearly evidenced by its active negotiation with the defendant in changing the terms of payment to provide for notes rather than for all cash prior to the delivery of the merchandise.

How then can it be said that it was so clearly proven that plaintiff remained unassociated and sufficiently aloof from the transaction so as to be held not responsible for the consequences of any misrepresentation made with reference to the sale? There is no doubt in my mind that there exists, at least, a triable issue in that respect. I reach my conclusion without resorting to the rule of law that the burden of proof is on the plaintiff to establish that it is a holder in due course after it is shown that a defense exists. (Uniform Commercial Code, § 3–302.) It is abundantly clear that regardless of who has the burden, there is a triable issue here raised. It is for these reasons that judgment should be vacated and the order granting summary judgment to the plaintiff be reversed.

STEVENS, CAPOZZOLI and BASTOW, JJ., concur with BREITEL, J. P.; RABIN, J., dissents in opinion.

Order and judgment affirmed, with $50 costs to the respondent.