**CARREFOUR U.S.A. PROPERTIES INC., Plaintiff–Appellee,**

v.

**110 SAND COMPANY, a Joint Venture between Melville Sand, Inc., and C. Broman Trans. Corp., Defendant–Appellant.**

**No. 122, Docket 90–7354.**

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1990.

Decided Nov. 2, 1990.

**346**

Stanley S. Getzoff, New York City, for plaintiff-appellee.

Kenneth L. Gartner, Mineola (Meyer, Suozzi, English & Klein, P.C., Mineola, of counsel), for defendant-appellant.

Before WINTER and MINER, Circuit Judges, and LASKER, District Judge.*

LASKER, District Judge:

This is an appeal from a decision of the United States District Court for the Eastern District of New York (Jordan, Magistrate) granting judgment in favor of Carrefour U.S.A. Properties Inc. ("Carrefour") and against 110 Sand Company ("110 Sand") for conversion and money had and received in connection with a check which Carrefour wrote to 110 Sand. 110 Sand argues that the judgment should be reversed because the court below erroneously denied 110 Sand the status of a holder in due course of the check. We agree.

### I.

Carrefour, a real estate developer, planned to build a large retail store on a parcel of land in Suffolk County. In January of 1987, Carrefour retained Strata Land Developers, Inc. ("Strata") to perform excavation work at the construction

* Hon. Morris E. Lasker, Senior District Court Judge of the United States District Court for the

site. Strata asked Carrefour to make an advance payment of $75,000 for the dumping charge quoted by the landfill operator, 110 Sand. Carrefour and Strata agreed that the deposit, which was in the form of a check from Carrefour to 110 Sand, was to be treated as a partial payment by Carrefour to Strata for excavation work to be done by Strata at the Carrefour site.

Carrefour then delivered to Strata its check for $75,000 payable to 110 Sand. In the lower left hand corner of the check, after the printed word "FOR," Carrefour's financial officer wrote "Deposit—Dumping Fee Schedule" and enclosed with the check a cover letter to Strata dated January 29, 1987 stating

> Enclosed please find check number 151 in the amount of $75,000 payable to 110 Sand Company as a partial payment to Strata Land Developers Inc. for work to be done by Strata Land Developers as shown in your breakdown of quantities and unit prices dated January 8th, 1987 under item 3, Grading and Earthwork, subheading Dump Fees.

Steve Rubin, president of Strata, delivered the check to 110 Sand in early February of 1987 and explained to the person to whom he gave the check that the check was to cover Strata's charges for dumping debris from a job that Strata was about to begin. 110 Sand applied the check to Strata's account.

In June of 1987, Carrefour learned that it might not be able to obtain the necessary governmental approval for the project. At Carrefour's request, Strata gave Carrefour a written representation that the $75,000 payment was refundable if the Carrefour project were cancelled or substantially delayed.

On August 29, 1988, Carrefour wrote to Strata requesting the return of the $75,000 deposit. By return letter on September 13, 1988, Strata informed Carrefour that Strata was in bankruptcy and could not pay the sum it owed to Carrefour, an unsecured creditor.

Southern District of New York, sitting by designation.

Jolted by this response, Carrefour wrote to 110 Sand requesting that 110 Sand return Carrefour's $75,000 deposit. This was the first occasion on which Carrefour and 110 Sand had had direct contact. 110 Sand refused the request, explaining that pursuant to instructions from Strata, the $75,000 had been applied to the dumping of demolition material for Strata's account for the period March 1987 through August 1987.

In November of 1988, the Carrefour project was abandoned because the local municipality changed its zoning regulations. No facilities of 110 Sand were ever used for the benefit of Carrefour.

In January 1989, Carrefour commenced this action seeking $75,000 from 110 Sand on theories of conversion and money had and received.[1] Following a one-day trial in the United States District Court for the Eastern District of New York, Magistrate David F. Jordan found in favor of Carrefour. 110 Sand appeals.

## II.

Section 3–302(1) of the New York Uniform Commercial Code provides:

A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

N.Y. U.C.C. § 3–302(1) (McKinney 1964).

Section 3–305 provides:

To the extent that a holder is a holder in due course he takes the instrument free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt....

N.Y. U.C.C. § 3–305.

110 Sand argues that it was a holder in due course of Carrefour's check and accordingly cannot be held liable to Carrefour for return of the funds. The court below held that because 110 Sand had "notice" of Carrefour's claim that the check be considered a deposit and because it gave Car-

refour no value for the check, it was not a holder in due course.

## A. Notice

■ "[T]o constitute notice of a claim or defense, the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith." N.Y. U.C.C. § 3–304(7). The Court of Appeals of New York has construed this section to mean that

questions of notice [are to] be determined by a subjective test of actual knowledge rather than an objective test which might involve constructive knowledge.... Holders in due course are to be determined by the simple test of what they actually knew, not by speculation as to what they had reason to know, or what would have aroused the suspicion of a reasonable person in their circumstances.

*Hartford Accident & Indemnity Co. v. American Express Co.*, 74 N.Y.2d 153, 162–63, 542 N.E.2d 1090, 1094–95, 544 N.Y.S.2d 573, 578 (1989) (citations omitted).

The court below held that because the check had Carrefour's name on its face as the source of the check and had a handwritten notation reading: "Deposit—Dumping Fee Schedule," 110 Sand had actual knowledge that the check was a deposit for the account of Carrefour and not payment for charges incurred by Strata. The court declared:

The fact that the defendant endorsed and cashed the check makes it clear that it is charged with knowledge of its contents. By simply reading the face of the check the defendant was necessarily informed that it was a deposit from the plaintiff to the defendant. The check clearly stated in the memo: "Deposit—Dumping Fee Schedule." Furthermore, the check had the plaintiff's name on the face, clearly identifying the source of the check. Based on the facts of this case, the court concludes that the defendant had actual knowledge that the check was a deposit

---

1. Federal jurisdiction is based on diversity of the parties and New York law applies.

for the account of the plaintiff, not Strata.[2]

On appeal, 110 Sand asserts that the notation on the check was at best ambiguous, and certainly not clear enough to give actual notice of Carrefour's claim or to permit the implication of bad faith. 110 Sand emphasizes that the check, which stated "Deposit—Dumping Fee Schedule," was in fact deposited by 110 Sand to the credit of Strata's dumping fee account.

The decision in *Hartford*, 74 N.Y.2d at 162–63, 542 N.E.2d at 1094–95, 544 N.Y.S.2d at 578, establishes the standard for what constitutes sufficient notice to deprive a party of holder in due course status under the New York Uniform Commercial Code. In *Hartford*, Stratford Skalkos, an employee of Avon Products, Inc. ("Avon"), caused Avon to issue checks which Skalkos delivered to various creditors in satisfaction of his own debts. In an attempt to conceal his theft, Skalkos altered the names of the payees to make them appear to be creditors of Avon's shipping department.[3] Skalkos' creditors negotiated the checks without inquiry.

Avon's insurance company brought an action against the creditors for, *inter alia*, conversion and money had and received. The New York State Supreme Court, affirmed by the Appellate Division, First Department, and the Court of Appeals, held that the creditors were holders in due course. The Court of Appeals ruled that the fact that the creditors knew Avon's corporate checks were being used to satisfy Skalkos' personal obligations did not constitute notice of a defense or claim within the meaning of the act:

> That defendants knew Avon's checks were being used to satisfy Skalkos' personal debts does not constitute actual knowledge of Avon's claim against the checks, or knowledge of such facts that defendants' action in taking the checks amounted to bad faith. Skalkos' transmission of company checks payable to

the order of defendants was itself an innocuous act. It did not give defendants notice of any claim by Avon against those checks or betray an ongoing fraud; nor did the application of the checks to Skalkos' personal indebtedness.

74 N.Y.2d at 163, 542 N.E.2d at 1095, 544 N.Y.S.2d at 578.

Applying this interpretation of the actual knowledge rule to the case at hand, we conclude that the notation on the Carrefour check was insufficient to alert 110 Sand that the check should be treated in some special way. The words "Deposit—Dumping Fee Schedule" were susceptible to more than one interpretation. Not all deposits are refundable. That Carrefour wrote a cover letter, explaining how the check should be treated, to Strata and not 110 Sand, and later asked Strata for assurances that the deposit was refundable, but sought no such assurances from 110 Sand, supports the proposition that the notation on the check was part of a dialogue between Carrefour and Strata and was not addressed to 110 Sand.

Under New York law, 110 Sand had no duty to inquire further as to any agreement Carrefour might have reached with Strata. As the court stated in *Hartford:*

> Parties who take commercial paper for value " '[are] not bound at [their] peril to be upon the alert for circumstances which might possibly excite the suspicions of wary vigilance.' " [*Hall v. Bank of Blasdell*, 306 N.Y. 336, 341, 118 N.E.2d 464; *Chemical Bank v. Haskell*, 51 N.Y.2d 85, 93–94, 432 N.Y.S.2d 478, 411 N.E.2d 1339.]
>
> . . . .
>
> ... That defendants, in retrospect, might have made further inquiry or might even have been careless when they accepted Avon's checks to pay Skalkos' debts (as plaintiff urges), is insufficient to deny them the status of holder in due course....

---

2. Findings of Fact, Conclusions of Law, Decision and Order of Magistrate David F. Jordan, dated March 28, 1990, at 4.

3. For example, a check delivered to the Metropolitan Opera Association, Inc. was made payable to "Metropolitan Oprtg. Co."

74 N.Y.2d at 163–65, 542 N.E.2d at 544 N.Y.S.2d at 579.

Carrefour attempts to distinguish *Hartford* by pointing out that in *Hartford*, the checks were transmitted by an employee of the company on whose account the checks were drawn, whereas the Carrefour check was delivered by an officer of Strata who was neither an employee nor an agent of Carrefour. Carrefour also asserts that even if the creditors in the *Hartford* case had closely scrutinized the Avon checks, they would not have know of Avon's claim, whereas 110 Sand by looking at the Carrefour check would have had actual knowledge that the check was a deposit and not a payment. We find these to be distinctions without differences. The mere fact that a representative of Strata delivered the check to 110 Sand was not a cause for investigation by 110 Sand, since the check was made out to 110 Sand and 110 Sand was to apply the funds to dumping for Strata and did so. The words "Deposit— Dumping Fee Schedule" were insufficient to alert 110 Sand to Carrefour's claim that the money was refundable. Under New York law, 110 Sand had no obligation to inquire further.

**B. Value**

■ The court below held that 110 Sand was not entitled to holder in due course status because it did not give value to Carrefour for the check. However, the appropriate test is whether 110 Sand gave value, not whether Carrefour received value. For example, in the *Hartford* case, the creditors were holders in due course of Avon's checks despite the fact that Avon received no value for the checks. The creditors had given Skalkos value for the checks, just as here 110 Sand gave value to Strata.

#### Conclusion

Because 110 Sand was a holder in due course of Carrefour's check, the judgment of the court below is reversed.