In re JOE SIPALA & SON NURSERY CORP., Debtor.

Andrew M. THALER, Trustee of Estate of Joe Sipala & Son Nursery Corp., Plaintiff,

v.

LEE SERVICING CORP., Defendant.

Bankruptcy No. 895–80486–478.
Adversary No. 897–8039–478.

United States Bankruptcy Court,
E.D. New York.

Oct. 30, 1997.

Thaler & Gertler, Michael A. Farina, Westbury, NY, for Plaintiff.

Flower & Medalie, Jeffrey Herzberg, Bay Shore, NY, for Defendant.

*DECISION GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT, DISMISSING THE COMPLAINT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT*

DOROTHY EISENBERG, Bankruptcy Judge.

Andrew Thaler, the Chapter 7 Trustee (hereinafter the "Trustee" or the "Plaintiff") of the Estate of Joe Sipala & Son Nursery Corp. (the "Debtor"), brought an adversary proceeding against Lee Servicing Corp. (the "Defendant"), the servicing agent for the home mortgage of Joseph Sipala ("Sipala"), the Debtor's principal, to recover as fraudulent conveyances five (5) transfers of $2,561.42 each, made by the Debtor to the Defendant, in payment of monthly mortgage installments on Sipala's residence within six years prior to the filing, totaling $12,807.10. Pursuant to Section 544(b) of Title 11 of the United States Code (the "Bankruptcy Code"), the Trustee invokes his status as successor to certain creditors [1] of the Debtor which had pre-petition claims against the Defendant under Sections 273, 274 and 276 of the New York Debtor and Creditor Law for allegedly fraudulent transfers and, pursuant to Section 550(a)(1) of the Bankruptcy Code, seeks to recover from the Defendant, as the initial transferee of the Debtor, the value of such transfers. The Defendant argues that recovery cannot be had against it because (a) the Defendant is a holder in due course of the checks evidencing the transfers; (b) the Trustee should seek recovery from Sipala and/or his wife, Francine Sipala, the parties who benefited by the transfer; (c) there is no proof that the Trustee has not recovered the proceeds of the transfers from Sipala; and (d) Section 550(d) of the Bankruptcy Code permits only a single satisfaction.[2] Defendant also asserts affirmative defenses, including but not limited to the defenses that (i) there is no practical way that the Defendant, as a leading national mortgage servicing corporation with daily receipts of hundreds, if not thousands, of checks, can ascertain whether a corporate check received in payment of a personal mortgage obligation is fraudulent in nature; and (ii) the subject transfers by the Debtor to the Defendant were in lieu of salary for the services performed by Sipala for the benefit of the debtor.

The Defendant has moved for summary judgment, asserting that there are no genuine issues of material fact to be resolved and that judgment should be rendered as a matter of law. The Trustee filed opposition to the Defendant's Summary Judgment Motion and cross-moved for Summary Judgment in favor of the Trustee. The Defendant's Summary Judgment Motion is supported by the Affidavit of Lori Grehan, the Bankruptcy Supervisor of Lee Servicing Corp., the person charged with the responsibility to monitor and manage all mortgage loans that are the subject of a bankruptcy case; a Local Rule 7056–1 Affidavit, and a Memorandum of Law in Support of the Summary Judg-

---

1. At the time the transfers were made, the Debtor was indebted to numerous creditors, including, but not limited to, Ace Hardware ($193.54); J. & L. Aikes ($4,404.10); Angel Plants ($5,936.50); Gardenville Supply ($15,626.56); North Fork Nursery ($2,682.50) and Vande Wetering Greenhouses ($9,349.80).

2. The Trustee also commenced an adversary proceeding against Joseph Sipala (Adv.Pro. No. 97–8041–478) to avoid alleged preferential transfers and/or fraudulent conveyances made by the Debtor to or on behalf of Sipala and to recover the sum of $102,562.10. Included among the transfers complained of in the Trustee's action against Sipala are the identical five (5) transfers which are the subject of this adversary proceeding. The Trustee and Sipala have entered into a proposed Stipulation and Order to settle the Trustee's action against Sipala for the sum of $30,000, which Stipulation and Order has been presented to the Court for signature, on notice to the 20 largest creditors of the Debtor. Upon an examination of the proposed Stipulation and Order, it is impossible for the Court to ascertain whether any portion of the $30,000 proposed to be paid by Sipala to the Trustee is attributable to the $12,807.10 transferred by the Debtor to Lee Servicing Corp. in payment of Sipala's monthly mortgage installments.

The Court's decision in the instant case is not based on Section 550(d) of the Bankruptcy Code, which permits only a single satisfaction under Section 550(a) of the Bankruptcy Code. Therefore, the Court makes no determination as to whether the Trustee is precluded from collecting from Lee Servicing Corp. because his claim for the five (5) mortgage payments has already been satisfied by Joseph Sipala.

ment Motion. The Trustee's cross-motion is supported by a Statement of Undisputed Facts Pursuant to Local Rule 7056–1; the Defendant's responses to Plaintiff's discovery requests; and a Memorandum of Law in Opposition to Defendant's Summary Judgment Motion and in Support of Plaintiff's Cross-Motion. The Defendant also filed a Reply Memorandum of Law. A hearing was held on August 12, 1997 on the Defendant's Summary Judgment Motion and the Plaintiff's Cross-Motion, and after hearing oral argument by counsel, the Court reserved its decision pending the filing of additional briefs.[3] After the hearing, the Trustee and the Defendant each filed a Supplemental Memorandum. After consideration of all the aforementioned papers and counsel's oral arguments, the Court grants summary judgment in favor of the Defendant and denies the Trustee's cross-motion.

### STATEMENT OF THE FACTS

The following facts are undisputed. The Debtor commenced a Chapter 11 case on January 27, 1995. The case was thereafter converted to Chapter 7 on August 2, 1995. The Plaintiff is the Chapter 7 Trustee, appointed to liquidate the assets of the Debtor's estate and make a distribution to creditors. In connection therewith, the Trustee commenced the instant adversary proceeding against the Defendant seeking to recover as fraudulent conveyances certain transfers made by the Debtor to the Defendant on behalf of Sipala, the principal of the Debtor,[4] and Francine Sipala, his wife, consisting of the following mortgage payments:

| Date of Check | Check No. | Payee | Amount |
|---|---|---|---|
| 02/18/93 | 1221 | Lee Servicing Corp. | $2,561.42 |
| 04/07/93 | 1282 | Lee Servicing Corp. | $2,561.42 |
| 05/06/93 | 1373 | Lee Servicing Corp. | $2,561.42 |
| 06/11/93 | 1534 | Lee Servicing Corp. | $2,561.42 |
| 10/07/93 | 1724 | Lee Servicing Corp. | $2,561.42 |

The checks were drawn on the Debtor's bank account at Norstar Bank. The Debtor did not owe Defendant any monies, nor did the Debtor have an ownership interest in the real

property underlying the mortgage. Rather, the aforementioned transfers were for monthly payments on a note and mortgage executed by Joseph Sipala and Francine Sipala, securing real property located in Dix Hills New York, which constituted the principal residence of Sipala and his wife. Prior to the commencement of the instant adversary proceeding, the Dix Hills property was sold and the mortgage indebtedness was satisfied, with a credit given to Sipala and his wife for the five (5) aforementioned payments.

The Defendant is one of the largest mortgage servicing companies in the United States, as it receives hundreds, if not thousands, of mortgage checks on a daily basis. The checks with the mortgage payment stubs directed to the Defendant are sent to a post-office box, which is essentially a lock-box; the checks are immediately deposited in a bank depository and the mortgage payment stub is separately sent to a clerk to enter the payment on the Defendant's computer system. The Defendant does not examine each check to insure that the maker of the check is actually a mortgagor of the Defendant. In fact, the maker of the mortgage payment is often not the actual mortgagor, as the Defendant regularly receives mortgage payments from Court appointed officials, fiduciaries, family members of mortgagors and employers of mortgagors. The Defendant did not examine the checks that it received from the Debtor in payment of Sipala's mortgage obligation. Rather the five (5) checks received from the Debtor in payment of Sipala's mortgage obligation came into the Defendant's possession and were deposited in a bank depository in accordance with the above described business practice of the Defendant.

The Defendant did not have actual knowledge of the alleged fraudulent nature of the five (5) aforementioned payments upon receipt of the monies, nor did the Trustee allege that the Defendant had actual knowledge of the fraudulent payments at the time

---

**3.** At the hearing, the Court directed the parties to brief two issues: (1) whether the Defendant had "dealt with" the Debtor for purposes of UCC § 3–305(2), and (2) whether the Trustee had established in the papers before the Court that the Debtor was insolvent at the time of the subject transfers. Since the Court's determination of the first issue was dispositive of the Summary Judg-

ment Motion, the Court did not reach the issue of whether the Debtor was insolvent at the time of the transfers.

**4.** Joseph Sipala was the President and one of two shareholders of the Debtor.

of the receipt and negotiation of the checks, nor does he claim that the Defendant acted in bad faith.

### DISCUSSION

Summary judgment should be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), as made applicable in bankruptcy cases by Fed.R.Bankr.P. 7056. This Court's responsibility is not to resolve disputed issues of fact but to determine whether then are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). A party opposing summary judgment has raised a genuine issue of material fact when the record taken as a whole could lend a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The party moving for summary judgment has the burden of showing that no genuine issue as to a material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In the instant case, the facts are undisputed and both parties have moved for summary judgment as a matter of law, asserting that there is no genuine issue of any material fact to be decided by the Court. Inasmuch as summary judgment enables a court to streamline the litigation process and to economize its resources, the Court believes that summary judgment is appropriate in this case.

Section 544(b) of the Bankruptcy Code grants the Trustee the authority to commence and prosecute fraudulent transfer causes of action pursuant to applicable state law. *In re Harbour*, 845 F.2d 1254, 1255 (4th Cir.1988); *In re Mankin*, 823 F.2d 1296, 1298 (9th Cir.1987); *In re Integra Realty Resources, Inc.*, 179 B.R. 264, 268 (Bankr. D.Colo.1995). Section 550(a) of the Bankruptcy Code provides that the Trustee may recover for the benefit of the estate the value of an avoided transfer from the initial transferee of such transfer or the entity for whose benefit such transfer was made; in this case, the Defendant or Joseph and/or Francine Sipala. However, unless the action is sustainable under New York law, the Trustee cannot prevail in this adversary proceeding.

■ The Defendant argues that the five (5) checks specifically identified above are negotiable instruments subject to Article 3 of the New York Uniform Commercial Code. As set forth in UCC § 3–104(2)(b), a check is a negotiable instrument, provided it is drawn on a bank and payable on demand. The five (5) checks that are the subject of this adversary proceeding were drawn on Norstar Bank and were payable on demand. Thus, this Court finds that they are negotiable instruments governed by Article 3 of the Uniform Commercial Code, which New York has adopted.

■ The Defendant argues that it is a holder in due course of the said checks. Pursuant to UCC § 3–302(1), a holder of a negotiable instrument is a holder in due course if it meets the following conditions:

1. a holder;

2. of a negotiable instrument;

3. who took it for value;

4. in good faith; and

5. without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of another. Further, a payee of a check may be a holder in due course. N.Y. UCC § 3–302(2) (McKinney 1993).

■ The Defendant is a holder of the checks. UCC § 1–201(20) defines a holder as a person who is in possession of an instrument issued or indorsed to him or to his order or to bearer or in blank. It is undisputed that the Defendant had possession of the checks and that the Defendant was the stated payee of said checks.

Defendant took the checks for value, since the Defendant credited the Sipalas' loan account for the total amount of the checks and, upon the sale of the Sipalas' residence, the

Sipalas were credited with the said payments and received a satisfaction of mortgage. The proper inquiry in determining whether the Defendant took for value is not whether the Debtor received value but whether the Defendant gave value. *Carrefour U.S.A. Properties Inc. v. 110 Sand Co.*, 918 F.2d 345, 349 (2d Cir.1990). In the case at bar, Defendant gave value to Sipala by crediting him for the mortgage payments.

The Defendant's good faith is not challenged herein by the Trustee.

The Defendant took the five (5) payments without notice of any defense against or claim to it on the part of another. UCC § 3–304(7) states that "to constitute notice of a claim or defense, the purchaser must have notice of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith." New York has adopted a subjective test in determining whether a holder has notice of a claim or defense under UCC § 3–304(7).[5] *See Hartford Accident & Indemnity Co. v. American Express Co.*, 74 N.Y.2d 153, 544 N.Y.S.2d 573, 577, 542 N.E.2d 1090 (1989). In interpreting this section, the New York Court of Appeals pointed out that "[t]he New York Legislature's addition of a nonuniform subjective test to the code's uniform notice provision signals a deliberate, unmistakable choice to give added protection to good-faith purchasers in this State." *Id.* at 578, 542 N.E.2d at 1095. The Court of Appeals also stated that UCC § 3–304(7)

> demands nothing less than *actual* knowledge of the claim against the instrument or of facts indicating bad faith in taking the instrument. Holders in due course are to be determined by the simple test of what they *actually* knew, not by speculation as to what they had reason to know, or what would arouse the suspicion of a reasonable person in their circumstances.

*Id.* (citations omitted, emphasis supplied). As stated by the Court of Appeals in *Hartford Accident & Indemnity*, the fact that the Defendant received corporate checks in payment of an individual's personal obligations

does not constitute actual knowledge and does not affect the Defendant's holder in due course status.

In *Hartford Accident & Indemnity*, Skalkos, a mid-level manager of Avon Products, Inc., requisitioned corporate checks totaling $162,538.65 from Avon to pay his own debts over a period of nearly three years. On check requisitions to Avon, Skalkos altered the names of the payees just enough to obscure immediate recognition by his employer yet remain in the range of apparent clerical error. Fifteen (15) Avon checks, for example, were paid to American Express Company, the largest recipient of the purloined funds. On their face, the checks were payable to "Amerex Corp., 770 Broadway, New York, N.Y. 10003." Each check requisition submitted by Skalkos to Avon explained those charges as relating to particularized shipping expenses. American Express and the other payees who received the purloined Avon funds credited the proceeds against Skalkos' existing personal indebtedness to them, for credit card charges, an opera subscription, apartment furnishings, car service and Oriental rugs purchased at auction. Hartford, a subrogee of Avon, brought suit against the payees of the purloined checks to recover the proceeds. Hartford made no assertion that any of the defendants was actually aware of Skalkos' fraudulent scheme. In fact, the Court of Appeals specifically stated:

> That defendants knew Avon's checks were being used to satisfy Skalkos' personal debts does not constitute actual knowledge of Avon's claims against the checks, or knowledge of such facts that defendants' action in taking the checks amounted to bad faith.... As the [lower court] observed, the use of corporate checks to pay employees' debts 'is an every day occurrence in the business world. Employers often help an employee to maintain a residence as an inducement to continued employment in an area where living expenses are high. Employers often pay for the entertainment of customers by an employ-

5. N.Y. UCC § 3–304(7) (McKinney 1993), a nonuniform amendment to the UCC adopted only by New York and Virginia (Va.Code Ann. § 8.3— 304(7)), requires that questions of notice be determined by a subjective test of actual knowledge rather than an objective test.

ee. Employers often pay for travel and transportation expenses of an employee.'

\*　　\*　　\*　　\*　　\*　　\*

Checks of this kind may represent an employer's compensation to its employee or the reimbursement of business expenses. That being so, defendants were entitled to conclude that Skalkos had lawfully transmitted the checks to them to discharge the expenses he had incurred. They were not required to surmise that the checks, rather than representing reimbursement or payment for Skalkos' services by his employer, were in effect stolen. *Parties who take commercial paper for value '[are] not bound at [their] peril to be upon the alert for circumstances which might possibly excite the suspicions of wary vigilance.'*

Thus, we conclude as a matter of law that defendants did not have notice of Avon's claim under UCC 3–304.

*Id.* at 578–579, 542 N.E.2d at 1095 (citations omitted, emphasis supplied).

The Trustee argues that the Defendant took the checks with notice of claims or defenses because notice was imputed to the Defendant by virtue of UCC § 3–304(2), which states:

The purchaser has notice of a claim against the instrument when he has knowledge that a *fiduciary has negotiated the instrument* in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty.

N.Y. UCC § 3–304(2) (McKinney 1993) (emphasis supplied). The Trustee alleges that Sipala was the president and a shareholder of Joe Sipala & Son Nursery Corp. and, therefore, wrote corporate checks in a fiduciary capacity. The Trustee also alleges that, although the Defendant knew that Joe Sipala & Son Nursery Corp. was not obligated under the note and mortgage executed by Joseph Sipala and Francine Sipala with respect to their personal residence, the Defendant accepted the Debtor's check, signed by Sipala, in payment of Sipala's own debt. Consequently, the Trustee argues that notice should be imputed to the Defendant of a defense or claim again the checks.

The Court of Appeals disposed of the identical argument by the plaintiff in *Hartford Accident & Indemnity Co. v. American Express Co.* in the following manner:

Assuming for purposes of this summary judgment motion that Skalkos was Avon's fiduciary, and that this fact was known to defendants, what is essential to plaintiff's argument is that Skalkos 'negotiated' the checks. UCC 3–304(2) requires as much.

Negotiation is defined in the code as 'the transfer of an instrument in such form that the transferee becomes a holder.' UCC 3–202(1). That concept, however, does not include the first delivery or 'issue' of a check, although the payee to whom the check is issued may become a holder. 'Thus, in the case of order instruments, only the payee or one who signs on his behalf can make the first effective endorsement and *negotiate* the instrument.' Accordingly, section 3–304(2) by its terms is inapplicable where, as here, the alleged fiduciary 'uses an instrument drawn by his principal in favor of the holder to pay not the principal's indebtedness to the holder but his own.'

*Hartford Accident & Indemnity*, 544 N.Y.S.2d at 577–78, 542 N.E.2d at 1094 (citations omitted, emphasis supplied). Here, too, only Lee Servicing Corp., the payee, or one who signed in its behalf, could make the first effective endorsement and negotiate the instruments. Based on the foregoing, Sipala did not "negotiate" the checks drawn by the Debtor in favor of the Defendant and, thus, UCC § 3–304(2) is inapplicable. Consequently, notice cannot be imputed to the Defendant of a defense or claim against the checks.

The Trustee seeks to distinguish the instant case from *Hartford Accident & Indemnity* by arguing that the latter case involved forged checks in which the payees' names were materially altered, whereas in the instant case the facts and circumstances are different. Specifically, the Trustee argues that upon receipt of the checks clearly identifying the Debtor as the maker, the Defendant had a duty to inquire whether Sipala, an

officer of the Debtor, had the right to use the checks for his own personal use. Based on this alleged distinction, the Trustee urges this Court to reject the Court of Appeals' holding in *Hartford Accident & Indemnity* and the applicability of Article 3 of the Uniform Commercial Code to the facts of the instant case and to instead apply Article 4 of the Uniform Commercial Code and the holding in a line of cases starting with *Sims v. United States Trust Co.*, 103 N.Y. 472, 9 N.E. 605 (1886). As the Defendant notes in its Reply Memorandum of Law, however, Sims and its progeny are inapplicable because they only refer to the fiduciary responsibilities that a depository bank must observe with its customers' bank accounts. Neither the Debtor nor Sipala ever maintained a bank account with the Defendant, especially as the Defendant does not maintain customer bank accounts. Accordingly, the *Sims* line of cases are inapplicable in the present case, where the issue is payment of Sipala's personal mortgage obligation, not a deposit in a bank account. As noted by the Court of Appeals in *Hartford Accident & Indemnity*, "[t]his distinction is important. A bank and its depositor have the contractual relationship of debtor and creditor, with an implicit understanding that the bank will pay out a customer's funds only in accordance with its instructions;" *Id.*, at 579, 542 N.E.2d at 1096. In the present case, there is no contractual relationship between the Debtor and the Defendant and, therefore, when the Defendant received the Debtor's checks in payment of Sipala's personal obligation, the Defendant had no statutory or common law duty to stop its ordinary business operations to inquire of the Debtor its reasons for issuing the subject checks before applying the proceeds against Sipala's indebtedness. UCC § 3–304(7) precludes the possibility that nonbank creditors such as the Defendant will be held to the strict duty of inquiry that may be required of bank payees. *Hartford Accident & Indem-*

*nity*, 544 N.Y.S.2d at 579, 542 N.E.2d at 1095–1096.

In view of the foregoing, this Court finds that the Defendant is a holder in due course of the check and, as such, the Trustee cannot sustain a cause of action against the Defendant under Section 273, 274 or 276 of the New York Debtor and Creditor Law. It is irrelevant whether the Debtor or Sipala, its principal, constructively or actually defrauded the Debtor's creditors by making the transfers in question. As a holder in due course, the Defendant received said checks free and clear of any and all claims to it on the part of any person and all defenses of any party with whom the holder has not dealt, including any and all fraud claims by any party, except fraud in the inducement claims.[6]

A holder in due course's liability for fraud in the inducement defenses is discussed at UCC § 3–305(2), which provides as follows:

> To the extent that a holder is a holder in due course he takes the instrument free from . . .
>
> (2) all defenses of any party to the instrument *with whom the holder has not dealt* except
>
> > (c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge Of its character or its essential term. . . .

N.Y. UCC § 3–305(2)(c) (McKinney 1993) (emphasis supplied). UCC § 3–305(2)(c) is known as the fraud in the factum defense which is only available when trickery in the actual issuance of the original check is demonstrated. For example, if the maker of the note could not read or understand the English language or did not have a reasonable opportunity to be informed of what he was signing, then a fraud in the factum defense would be available. *State Bank of Albany v.*

---

6. As a holder in due course, the Defendant took the mortgage payments free of all claims to it on the part of any person and all defenses of any party to the instrument with whom the holder has not dealt except five (5) limited defenses (infancy; such other incapacity, or duress, or illegality of the transaction, as renders the obli-

gation of the party a nullity; a misrepresentation which induced the party to sign the instrument without knowledge of its character or essential terms; and any other discharge of which the holder has notice when he takes the instrument). See N.Y. UCC § 3–305.

*Roarke,* 91 A.D.2d 1093, 458 N.Y.S.2d 300, 303 (3d Dep't 1983); *Keeseville National Bank v. Gulati,* 194 A.D.2d 970, 599 N.Y.S.2d 175, 176 (3d Dep't 1993), *appeal denied,* 82 N.Y.2d 663, 632 N.E.2d 461, 610 N.Y.S.2d 151(1994); *Norstar Bank of Upstate N.Y. v. Office Control Systems, Inc.,* 165 A.D.2d 265, 566 N.Y.S.2d 743 (3d Dep't), *appeal dismissed,* 78 N.Y.2d 1110, 586 N.E.2d 51, 578 N.Y.S.2d 868 (1991). In the instant case, a fraud in the factum defense is unavailable to the Debtor and/or to the Trustee because UCC § 3–305(2)(c) is meant to apply to an uneducated person, unable to read and determine that the instrument is not what it was represented to him to be, and that he had no reasonable opportunity to be informed of its true character. *See State Bank of Albany v. Roarke,* 458 N.Y.S.2d at 303. The Trustee has not alleged or demonstrated that (i) the Debtor was unable to read or understand the English language at the time it executed and delivered the five (5) checks; or (ii) the Defendant made a misrepresentation to induce the execution and delivery of the checks. Therefore, the Trustee cannot prevail on a fraud in the factum defense.

The Trustee cites *General Motors Acceptance Corp. v. General Acc. Fire & Life Assur. Corp.,* 67 A.D.2d 316, 415 N.Y.S.2d 536 (4th Dep't 1979) for the proposition that crediting a borrower's account for the amount of the borrower's customary remittance check within a post office lock-box does not constitute the giving of value sufficient to confer holder in due course status on the bank (Memorandum of Law in Opposition to Summary Judgment Motion and in Support of Cross-Motion, p. 8). However, *General Motors Acceptance Corp.* does not stand for the proposition for which it was cited. In fact, the ultimate decision in that case when applied to the facts herein would support this Court's conclusion.

The Trustee argues in Point II of his Supplemental Memorandum that, even if the Defendant is a holder in due course, the Defendant took the checks subject to *any* defense of a party with whom it has dealt and that the Defendant *dealt with the Debtor* as the drawer of the checks. Therefore, the Trustee maintains that the Defendant took the checks subject to *any defense* that the Debtor, as drawer, could assert, including personal defenses, and that Section 558 of the Bankruptcy Code [7] permits the Trustee, as representative of the Debtor's bankruptcy estate, to assert any personal defense that the Debtor could raise against the Defendant (i.e., breach of fiduciary duty, diversion of corporate funds, want of consideration and failure of consideration).

Although the Defendant, in its Supplemental Memorandum, has not addressed the issue of whether Lee Servicing Corp. *dealt with* the Debtor for purposes of UCC § 3–305(2) and, if so, whether it necessarily follows that the Defendant took the checks subject to the Debtor's personal defenses, the Court's own research reveals that New York courts have consistently reasoned that the "Dealt [With] Provision" of UCC § 3–305(2) "was not meant to be given literal or unlimited application, for UCC § 3–302(2) provides that the holder of a negotiable instrument may, if he satisfies the prerequisites set out in § 3–302(1), be a holder in due course *even though he is the payee.*" *A.I. Trade Finance, Inc. v. Laminaciones de Lesaca, S.A.,* 41 F.3d 830, 838 (2d Cir.1994) (citations omitted, emphasis supplied). In *A.I. Trade Finance,* the Second Circuit explained this interpretation of New York law as follows:

[T]he official commentary to [UCC Sec. 3–302] notes that ... a payee is entitled to holder-in-due-course status regardless of 'whether he takes the instrument by purchase from a third person or directly from the obligor.' N.Y. UCC Sec .3–302(2) cmt. 2. Thus, a literal application of the 'dealt [with]' provision of Sec. 3–305(2) would nullify so much of sec. 3–302(2) as is designed to accord holder-in-due course sta-

---

7. Section 558 of the Bankruptcy Code provides: The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of fraud, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

11 U.S.C. § 558.

tus to a payee who has purchased the instrument directly from the obligor.

Instead, the 'dealt [with]' provision of Sec. 3–305(2) has been viewed as a limited restriction on Sec 3–3302(2), to be applied to deny holders in due course their normal immunity *only when they are found to have been 'so involved with the disputed transaction that they should not be free from defenses.'* Thus, the 'dealt [with]' provision is frequently applied to deny holder-in-due-course immunity to a holder payee who was a party to the underlying commercial transaction with the instrument's maker, for in those circumstances if there is a failure of consideration in the underlying transaction, the payee will likely be aware of it. As thus applied, the 'dealt [with]' provision denies holder-in-due-course immunity to a person who had such intimate involvement in the underlying transaction as to warrant imputing to him knowledge of its irregularities—an application that essentially replicates two of the preconditions to achievement of holder-in-due course status, i.e., that the holder must take the instrument in good faith and without notice of defenses.

This view that the 'dealt [with]' provision largely mirrors the Sec. 3–302(1) analysis of good faith and notice finds support in the 1990 revision of Article 3 of the UCC—a revision not adopted in New York—which eliminated the 'dealt [with]' language of UCC Sec. 3–305(2) as unnecessary. The revised version, instead of denying the normal holder-in-due-course immunity to holders in due course who have 'dealt [with]' the obligor, provides more simply that a holder in due course shall not be 'subject to defenses of the obligor ...' against a person other than the holder. The Official Comment to the revised Sec. 3–305(2) explains that the language of the prior Sec. 3–305(2) 'was not at all clear and if read literally could have produced the wrong result.... It is not necessary.'

\* \* \* \* \* \*

Further, [in *Saale v. Interstate Steel Co.,* [27 A.D.2d 1] 275 N.Y.S.2d 532 (1st Dep't 1966), *aff'd,* 19 N.Y.2d 933, 281 N.Y.S.2d 340, 228 N.E.2d 397 (1967), the Appellate Division] concluded that holder-in-due-course immunity is available notwithstanding the holder's having dealt directly with the promisor in the negotiation of credit terms, so long as the holder's role in the underlying transaction was limited and the holder had no notice of any defects in that transaction, [and the] Court of Appeals, after briefly describing the facts, affirmed *Saale* on the opinion of the Appellate Division.

Thus, though the courts in *Saale* did not directly address § 3–305(2), their holding was consistent with both (a) the general view that the 'dealt [with]' limitation is essentially the equivalent of the good-faith and lack-of-notice requirements, and (b) the 1990 revision's premises that the 'dealt [with]' limitation should not be taken literally and, if applied properly, is unnecessary. The correctness of this interpretation of *Saale* ... [is] confirmed by the New York Court of Appeals discussion in *Hartford Accident & Indemnity Co. v. American Express Co.....* The *Hartford* court, after noting the requirements for holder-in-due-course status, including good faith and lack of notice, stated, citing its affirmance of *Saale,* that '[s]atisfaction of these requirements is all that is necessary for a payee to obtain the special protections of a holder in due course.'

*A.I. Trade Finance Inc.,* 41 F.3d at 838–40 (citations omitted, emphasis supplied).

In the instant case, Lee Servicing Corp., the payee, took the checks evidencing the five (5) subject mortgage payments without any actual knowledge of the circumstances surrounding the Debtor's issuance of the checks. The Defendant's conduct satisfied the "good faith" and "lack of notice" requirements of UCC § 3–302(1) and, consequently, the Defendant is a holder in due course even though it is the payee. In view of the interpretation of the "dealt [with]" provision of UCC § 3–305(2) set forth in *A.I. Trade Finance,* the Defendant is not subject to the personal defenses of the Debtor and, since the Trustee stands in the shoes of the Debtor, the Defendant is not subject to the personal defenses asserted by the Trustee

(i.e., breach of fiduciary duty, diversion of corporate funds, want of consideration and failure of consideration). As stated by the Supreme Court in *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966): "The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition." *Id.,* at 101, 87 S.Ct. at 276.

This decision is in accord with New York's clear policy favoring the ready negotiability of commercial paper and assuring that good-faith purchasers need not stand as insurers of the honesty of a maker corporation's officers or employees. To further that policy, the Uniform Commercial Code assigns losses by the relative responsibility of the parties, allocating liability to the party best able to prevent them. In this dispute, the Debtor was plainly the party best able to prevent the unauthorized use of corporate funds. Clearly, New York law will not sustain the Trustee's recovery against the Defendant. Consequently, the Court grants summary judgment in favor of the Defendant dismissing the complaint, and denies the Plaintiff's cross-motion for summary judgment.

### CONCLUSION

1. This matter is before the Court pursuant to Fed.R.Civ.P. 56, as made applicable to bankruptcy cases by Fed.R.Bankr.P. 7056.

2. The Court finds that there is no genuine issue as to any material fact and that the Defendant is entitled to summary judgment as a matter of law dismissing the complaint, as the Plaintiff cannot sustain an action against the Defendant under New York law or under Section 544 of the Bankruptcy Code.

3. The Court also denies the Plaintiff's cross-motion for summary judgment, as the Plaintiff has no sustainable causes of action against the Defendant pursuant to Section 273, 274 or 276 of the New York Debtor and Creditor Law or under Section 544 of the Bankruptcy Code.

Defendant's counsel is directed to settle an Order in accordance with this decision on seven (7) days' notice to all parties having an interest herein.